**José A. de Jesus TOLEDO, et al., Plaintiffs,**

v.

**AYERST–WYETH PHARMACEUTICAL, INC., et al., Defendants.**

**Civ. No. 91–1792 GG.**

United States District Court, D. Puerto Rico.

Nov. 29, 1993.

---

the commentary to Rule 57 cannot limit the district courts' rulemaking power in ways not prescribed by the Rule's text.

Matos Bonet & Matos De Juan, San Juan, PR, for plaintiffs.

McConnell Valdes Kelley Sifre Griggs & Ruiz Suria, San Juan, PR, for defendants.

## OPINION AND ORDER

GIERBOLINI, Chief Judge.

### I. Procedural History and Introduction

This action alleges claims of retaliatory discharge under § 510 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1140, as well as various state claims. On June 3, 1992, we issued an Order converting the motions to dismiss of co-defendants Ayerst–Wyeth Pharmaceutical, Inc. (AWPI) and American Home Products Corporation (AHP) into a motion for summary judgment. On June 24, 1992, defendants' filed a joint Memorandum in Support of Motion for Summary Judgment, to which the plaintiff [1] filed an opposition on November 6, 1992. Defendants filed a motion requesting additional time to reply to plaintiff's opposition. We denied that motion and the defendants did not move for reconsideration of our denial.

The motion for summary judgment focuses on three issues: subject matter jurisdiction, personal jurisdiction, and pendent jurisdiction. After reviewing the submissions made by the parties, we make the following findings. Federal question jurisdiction exists under ERISA. In addition, while we have personal jurisdiction over American Home Products Corporation, we will not pierce that co-defendant's corporate veil. Finally, we exercise pendent jurisdiction over plaintiff's state claims because ERISA may potentially preempt some of the claims, an issue the parties have not addressed in their motion for summary judgment. Therefore, we grant defendant's motion for summary judgment in part and deny it in part.

### II. Facts

Plaintiff claims that he was illegally discharged from his employment in order to interfere with his entitlement to or attain-

---

1. Throughout this opinion and order, we refer to "plaintiff" in the singular, although this action involves more than one plaintiff. We do so because the facts from which the case arises all concern plaintiff José A. de Jesus Toledo's termination from employment. The other plaintiffs are José A. de Jesus Toledo's wife and their conjugal partnership.

ment of his short and long term disability benefits and health plan. Plaintiff José de Jesus Toledo worked for AWPI, a Delaware corporation with its principal place of business in Puerto Rico, as a materials handler from March 1985 to the time of his dismissal on June 27, 1990.

As an employee of AWPI, the plaintiff was covered under AWPI's fringe benefit plans, including health and retirement plans. On June 14, 1990, the plaintiff fell and injured his back while he was at work. He reported the injury to his supervisor, but the supervisor took no action concerning the injury. The next day, the plaintiff called his supervisor to report that he would not be coming to work because of the pain in his back. The plaintiff then went to his doctor, who diagnosed his injury as a dorso lumbar sprain and recommended rest.

On June 18, 1990, the plaintiff reported to work and was examined by the dispensary nurse. He was ordered to report to work. The plaintiff alleges that AWPI refused to report his injury to the State Insurance Fund as required by the Puerto Rico Workmen's Compensation Act. On June 26, 1990, the plaintiff returned to his doctor who prescribed medication. On the next day, the plaintiff alleges that he returned to work and when he was leaving the work site after the work day was over, he was detained by two security guards who violently interrogated him.

The plaintiff was discharged. Although plaintiff requested that AWPI state the reasons for his dismissal and that they report his injury to the State Insurance Fund, AWPI did neither. The plaintiff went to the State Insurance Fund on his own to report his injury. In response to a request from the State Insurance Fund, AWPI issued an accident report claiming that plaintiff's complaint to the State Insurance Fund was the first time plaintiff had indicated that he had been injured at work. The State Insurance Fund determined that plaintiff's injury was work-related. The plaintiff was hospitalized for emotional and psychological symptoms related to his injury and AWPI's actions.

On February 26, 1991, the State Insurance Fund determined that plaintiff could return to work. They determined that his injury resulted in a partial physical disability loss of 5% of his general physiological functions. Although plaintiff reported to work on March 7, AWPI refused to allow plaintiff to return to his job. The plaintiff experienced emotional and psychological effects as a result of AWPI's actions and has visited a psychiatrist. AWPI filled the position left vacant as a result of plaintiff's dismissal with a twenty-five year old worker.

### III. Defendant's Arguments for Summary Judgment

#### A. Subject Matter Jurisdiction—Diversity and Federal Question Jurisdiction.

The defendants claim that the plaintiff has failed to establish complete diversity of citizenship because AWPI's principal place of business is Puerto Rico. In addition, because the facts alleged by plaintiff pertain to a work-related injury covered by Workmen's Compensation and because the compensation plan at issue is allegedly a payroll practice, not a welfare benefit plan, the plaintiff purportedly has not pled a claim under ERISA.

Even if the plan falls under ERISA, defendants claim that the plaintiff has failed to allege sufficient facts to show that AWPI's motivation in discharging him was to interfere with plaintiff's ERISA protected benefits. Plaintiff's discharge was allegedly not a pretext for depriving him of any benefits to which he was entitled or to which he may have attained a right. Instead, plaintiff's loss of benefits was purportedly a mere consequence, not a motivating factor, of his termination.

In addition, defendants claim that the plaintiff never applied for short or long term disability benefits and that plaintiff's medical expenses would not have been covered by AWPI's group health plan because the plan expressly excludes benefits for medical treatment or services related to damages suffered during the course of employment, or to an injury for which the employee is entitled to Workmen's Compensation Act benefits.

### B. In Personam Jurisdiction

Co-defendant AHP challenges this court's in personam jurisdiction over AHP. According to AHP, it is a Delaware corporation with its principal place of business in New York. It alleges that it has not had the necessary minimum contacts with Puerto Rico to subject it to the in personam jurisdiction of this court. AHP bases this challenge on plaintiff's alleged failure to set forth sufficient facts showing that AHP can be reached by Puerto Rico's long arm statute as the controlling parent of AWPI or that AHP has committed a tort in Puerto Rico.

According to AHP, AWPI is a wholly-owned subsidiary of A.W. Holdings, Inc. The affidavits submitted by AHP officers, Mr. Méndez and Mrs. Carol G. Emerling, refute plaintiff's contention that AHP controls AWPI's management, labor relations, finances, and health and retirement plan. AWPI has maintained its own general ledger, accounting books, prepared its own business plans, payroll, budget, and financial statements. In addition, AWPI administered and controlled its health plan and other related benefits and controlled all decisions regarding employment of its employees, including transfers, reclassifications, hirings and firings.

### C. Pendent Jurisdiction

The defendants finally ask the court not to exercise pendent jurisdiction over plaintiff's state claims.

## IV. Plaintiff's Arguments Against Summary Judgment

### A. Subject Matter Jurisdiction

Plaintiff concedes that diversity of citizenship jurisdiction does not exist in the present action. Nevertheless, he asserts that we have federal question jurisdiction over his ERISA claim. Allegedly plaintiff has presented a prima facie case of an ERISA violation because 1) he was a participant in a health benefit plan protected by ERISA; 2) he satisfied the conditions for receiving the benefits; and 3) he was denied those benefits because he was illegally dismissed and denied reinstatement.

According to the plaintiff, his dismissal was illegally motivated by AWPI's desire to interfere with the attainment of his health benefits. The defendant refused to report the work related injury to the State Insurance Fund. Therefore, at the time of plaintiff's dismissal, AWPI could not foresee that plaintiff's medical expenses would be covered by the State Insurance Fund at all or what percentage of the injury would be considered work related. Although his injury may have been covered by Workmen's Compensation, his dismissal was still motivated by AWPI's illegal desire to prevent him from using his health plan in the future.

### B. In Personam Jurisdiction

According to the plaintiff, we have in personam jurisdiction over American Home Products because AWPI is an agent or instrument of AHP, which administers and controls AWPI's affairs, including its health plan. The plaintiff has received brochures from his former employer detailing the health and retirements plans. The two brochures bear prominently on the cover the American Home Products logo. The two brochures also contain letters of welcome from the President and first Vice President of AHP. In addition, the retirement plan brochure is expressly labeled the American Home Products Corporation Retirement Plan—United States.

The plaintiff addresses our attention to information provided by the defendants themselves to support his position. The affidavit submitted by Mrs. Carol Emerling for defendants states that "American Home Products Corporation has its own employees in charge of administering health plans and related benefits at Ayerst–Wyeth Pharmaceutical, Inc." The Report of Independent Public Accountants, issued by the Arthur Andersen & Co. and submitted by the defendants, identifies AWPI as "a Delaware corporation and a wholly owned indirect subsidiary of American Home Products." Page three of the report specifies: "6. Pension Plan: The Company participates with its parent company in a pension plan covering substantially all employees who have worked or the Company for at least on year...." The plaintiff at-

tempts to show from these statements that AHP controlled the group insurance plan so that AWPI was a mere agent or instrumentality of AHP. Therefore, plaintiff argues that we have personal jurisdiction over AHP.

## C. Pendent Jurisdiction

Finally, the plaintiff asks the court to exercise pendent jurisdiction over his state claims.

## V. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, we consider the undisputed facts in the light most favorable to the non-moving party. *General Office Products Corp. v A.M. Capen's Sons, Inc.*, 780 F.2d 1077 (1st Cir.1986); *Attallah v. United States*, 955 F.2d 776, 779 (1st Cir.1992). The burden is on both parties to file necessary materials with the court to support their claims for and against summary judgment. Fed.R.Civ.P. 56(e) and *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 929–30 (1st Cir.1983). The party who moves for summary judgment bears the burden of showing that there is no genuine dispute concerning facts which are material to the issues raised in the pleadings. *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985, 991 (1st Cir.1983). At the same time, the opponent must demonstrate, by competent evidence, the existence of a triable issue which is both genuine and material to its claim. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmoving party "may not rest upon the mere allegations or denials of the ... pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). There is no trialworthy issue unless there is enough competent evidence to enable a finding favorable to the nonmoving party.

■ "Genuine" means that the evidence about the issue is such that a reasonable jury could resolve the point in favor of the non-moving party. *United States v. One Parcel of Real Property with Bldgs.*, 960 F.2d 200, 204 (1st Cir.1992). "Material" means that the fact may alter the outcome of the litigation. *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 352 (1st Cir.1992); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). Materiality is determined under the applicable substantive law. *Gadson v. Concord Hospital*, 966 F.2d 32, 33 (1st Cir.1992).

## VI. Discussion

### A. Subject Matter Jurisdiction

■ Because the plaintiff acknowledges that complete diversity does not exist among the parties, we will not address this issue. We turn then to the question of federal question jurisdiction. 29 U.S.C. § 1140 expressly states:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ..., or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

The allegation that an employee was discharged from his employment for the purpose of depriving him of continued participation in the employer's company-provided insurance program states a cognizable claim under § 510 of ERISA. *Fitzgerald v. Codex Corp.*, 882 F.2d 586, 588–89 (1st Cir.1989).

■ ERISA protects two types of employee benefits plans: pension benefit and welfare benefit plans. ERISA defines an employee welfare benefit plan as follows:

(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or oth-

erwise, (A) *medical,* surgical, or hospital care or benefits, or benefits in the event of sickness, accident, *disability,* death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1) (emphasis added). In deciding whether a plan is a welfare benefit plan under ERISA, we must therefore determine whether "(1) a 'plan, fund, or program' (2) [was] established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries." *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982) (employers and unions that subscribed to a group insurance trust to furnish health insurance for employees or members established employee welfare benefit plans for purposes of deciding subject matter jurisdiction over ERISA claims). A plan is established if from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. *Donovan,* 688 F.2d at 1373. Because ERISA is a remedial statute, we construe it liberally to effectuate its purpose to protect employee benefit fund participants. *Belland v. Pension Ben. Guar. Corp.,* 726 F.2d 839, 844 (D.C.Cir.1984).

## 1. Medical Benefits and Short and Long Term Disability Benefits Plans

█ In their brief in support of their motion for summary judgment, the defendants did not provide the court with a copy of the Employee Group Insurance Plan (Programa de Seguro Colectivo para los Empleados) policy. The only description we have of the Plan was submitted by the plaintiff, who provided the court with the letter of introduction printed in the Employee Group Insurance Plan brochure. That letter indicates that the brochure contains a Summary Description of each of the plans included in the Plan. The letter specifically refers to the fact that these descriptions are called Summary Plan Descriptions pursuant to the Employee Retirement Income Security Act of 1974. 29 U.S.C. §§ 1021–1022. The letter mentions that the plan "helps to pay the medical and dental expenses that you, and the eligible members of your family, incur" and "provides a source of income in the event that you are incapacitated and are unable to work."

We find that the medical benefits plan and the short and long term benefits plans in question here are welfare benefits plans protected by ERISA and that AWPI established the plans to provide benefits to its employees, including the plaintiff here. The intended benefits are medical and short and long term disability benefits, the beneficiaries are employees of Ayerst–Wyeth Pharmaceuticals, Inc., AWPI pays for the Plan, and claims could be either made to the Personnel Department or the Benefits Administrator. Compare *International Resources Inc. v. New York Life Ins. Co.,* 950 F.2d 294, 298 (6th Cir.1991) (ERISA plan existed because the company contracted with third party for insurance for its employees; the company obtained the coverage for its employees; the coverage was automatic and applied to all employees; and the company paid the insurance premiums). AWPI does not merely advertise the availability of the group health insurance plan, but endorses the plan. See *Kanne v. Connecticut General Life, Ins. Co.,* 867 F.2d 489, 493 (9th Cir.1988) (group health policy was part of ERISA employee welfare benefits plan notwithstanding that employer's function was minor and ministerial; plan was described in brochure as ERISA plan, evidencing intent to create such plan, and trust entity, as administrator of plan, endorsed group policy rather than merely advertising it). Considering this information, we find that we have subject matter jurisdiction as to plaintiff's claims concerning these welfare benefit plans. The defendants have failed to present any facts or present any proof, beyond mere allegations, to refute plaintiff's showing that the

benefit plans are welfare benefit plans under ERISA.

### 2. Short and Long Term Disability Plans v. Payroll Practice Plans

■ While the plaintiff claims that the disability benefit plan is an employee welfare benefit plan under ERISA, AWPI claims that it is a payroll practice plan, exempt from ERISA. AWPI fails to understand plaintiff's complaint fully. Plaintiff's first cause of action alleges he was discharged to prevent him from using or attaining use of his disability and health plan benefits. His fifth cause of action, on the other hand, alleges a violation of a payroll practice plan, paid from general assets, which pays the employee "the difference between [the employee's] pay under the laws of the Commonwealth and [the employee's] compensation under [his or her] Paid Sick Leave and/or Partial–Pay Sick Leave, if any." (Pls.' Compl. at 10–11; see also Defs.' Mem.Supp.Summ.J. at 9–11.) The two claims are separate causes of action.

ERISA does not protect certain benefits an employer provides to employees from general assets. For example, "payroll practices" paid from general assets are exempt pursuant to 29 C.F.R. Section 2510.3–1(b)(2). That section states that ERISA exempts from protection "payment of an employee's normal compensation out of the employers' general assets, on account of periods of time during which the employee is physically or mentally unable to work or is otherwise absent for medical reasons, such as pregnancy or psychiatric treatment." The commentary on this exemption from ERISA coverage is very scant. If AWPI funded the disability plan from general assets, that fact alone would not exempt the plan from ERISA coverage. See *Williams v. Wright,* 927 F.2d 1540, 1544 (11th Cir.1991) (the payment of benefits out of an employer's general assets does not affect the threshold question of ERISA coverage), citing U.S. Dept. of Labor Opinion Letters 78–18 (Sept. 20, 1978) and 79–75 (Oct. 29, 1979).

Department of Labor advisory opinions suggest that a disability plan falls into the aforementioned payroll practice exemption if it is designed to replace the loss of an employee's normal compensation for absences from work resulting from medical problems that are foreseeably temporary. See U.S. Dept. of Labor Opinion Letters 93–2A (Jan. 12, 1993), 1993 WL 68525 (E.R.I.S.A.) (maximum benefit period of 180 days); 85–23A (June 10, 1985), 1985 WL 32814 (E.R.I.S.A.) (maximum benefit period of varying duration according to employee group); 82–44A (Aug. 27, 1982), 1982 WL 21227 (E.R.I.S.A.) (medical leave of absence granted for up to 30 days, with additional 30 day extensions, up to a maximum of 6 months). When the temporary period ends, an employee may then become entitled to benefits under a disability plan. See U.S. Dept. of Labor Opinion Letters 83–37A (July 18, 1983), 1983 WL 22522 (E.R.I.S.A.) (specific payroll practice plan provides benefits from general assets for a maximum period of 6 months, after which employees enrolled in Contributory Long Term Disability Income Plan may begin to receive benefits under that program). The existence of a payroll practice plan, therefore, does not mean that short and long term disability benefit plans do not exist. We find that the plaintiff's fifth cause of action, alleging violation of a payroll practice plan, does not fall under the coverage of ERISA. But at the same time, we find that disability and health plans do exist in this case and that they are welfare benefit plans protected by ERISA.

### 3. ERISA and Workmen's Compensation

■ Defendant's assertion that plaintiff's factual allegations only pertain to his efforts to receive workmen's compensation is not supported by the supporting documentation. The fact that an employee has recourse to workmen's compensation for a specific injury does not mean that the employee's ERISA claim must necessarily fail. Workmen's compensation benefit schemes or plans are usually exempt from ERISA. Therefore, if the plaintiff lost his job merely because he repeatedly requested that a workmen's compensation claim be filed, he may not have an ERISA cause of action. *Stingley v. Tennco, Div. of Tetley, Inc.,* No. 88 C 20850, 1988 WL 121532, at *3 (N.D.Ill. Nov. 8, 1988) (workmen's compensation plan is not an ERISA protected plan so that discharge from employment arising from employee's filing or

threat to file a workmen's compensation claim does not state a claim under 29 U.S.C. § 1140).

But here, it is unclear whether defendant discharged the plaintiff merely because the plaintiff wished to pursue a workmen's compensation claim or because the defendant wished to prevent the plaintiff from attaining any medical benefits to which the plaintiff was potentially entitled. The plaintiff alleges the latter. In considering the combined presence of workmen's compensation and a welfare benefit plan, we cannot ignore the fact that the two may dovetail just as a payroll practice plan and a welfare benefit plan may dovetail with each other, as we discussed above. For instance, when an employee's injury is found to be only partially work-related, workmen's compensation may cover only the work-related portion, while an ERISA welfare benefit plan may cover the non-work-related portion of the injury. See *McBarron v. S & T Industries, Inc.*, 771 F.2d 94, 101 (6th Cir.1985) (Engel, J., concurring) ("where an employee is entitled to worker's compensation only to the extent that his disability was employment-related (here five percent) and where that employee did not receive the remaining worker's compensation to which he would be otherwise entitled (here ninety-five percent), he is only 'entitled' to the five percent of worker's compensation be received. Therefore, he should be disqualified under the [disability benefits] plan only to the extent of that five percent and should receive ninety-five percent of the plan's normal disability benefits"). Because plaintiff's back injury was only partially work-related according to the State Insurance Fund, plaintiff's medical and disability plans could have potentially covered that portion of his injury which was not work related. Therefore, a genuine issue of material fact exists: whether "the parties intended to disallow all disability benefits otherwise payable under the plan when a qualified plan member is entitled to any workers' compensation benefits." *McBarron*, 771 F.2d at 101. If no such intention exists, discharge, motivated by the desire to prevent plaintiff's use of his medical or disability benefits, would be prohibited by ERISA despite the workmen's compensation coverage.

### 4. Motivation or Intent— Burdens of Proof

The question of AWPI's motivation in discharging the plaintiff presents a genuine issue of material fact which defeats defendant's motion for summary judgment. A claim of retaliatory discharge under § 510 of ERISA entails shifting burdens of proof. Under ERISA, a participant of an employee benefit plan must establish a prima facie case of discrimination against him for exercising a right granted by the benefit plan. *McGann v. H & H Music Co.*, 946 F.2d 401, 404 (5th Cir.1991). The plaintiff must show his discharge was motivated by his employer's desire to retaliate against him for exercising such a right or to interfere with an existing right or with the attainment of benefits to which he might become entitled. *McGann*, 946 F.2d at 404. The plaintiff only needs to show that interference with ERISA rights was the motivating, but not the only, factor in the discharge. *Humphreys v. Bellaire Corp.*, 966 F.2d 1037 (6th Cir.1992). But he must also show that the loss of benefits was more than the incidental result of discharge. *Seaman v. Arvida Realty Sales*, 985 F.2d 543 (11th Cir.1993). Circumstantial evidence may be used to establish the employer's intent. See *Redick v. Kraft, Inc.*, 745 F.Supp. 296 (E.D.Pa.1990). Once the participant establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge. If the employer articulates such a legitimate reason, the participant must prove that the reason is a pretext for the discriminatory action. *Smith v. Rochester Telephone Business Marketing Corp.*, 786 F.Supp. 293 (W.D.N.Y.1992); *Lawford v. New York Life Ins. Co.*, 739 F.Supp. 906 (S.D.N.Y.1990).

This is not a case in which the plaintiff has failed to make factual allegations why his termination was wrongful. He clearly alleges an illegal motivation for his termination. Compare *Codex*, 882 F.2d at 589 and *Felton v. Unisource Corp.*, 940 F.2d 503 (9th Cir. 1991) (complaint alleging both state common-law wrongful termination and civil rights handicap discrimination claims, but no factual allegations regarding why termination was wrongful, did not state ERISA claim on its

face). The plaintiff's factual allegations indicate that the loss of his benefits was not incidental to his termination; instead, denial of benefits may have been the motivating force behind termination.

We find that plaintiff's factual allegations state a claim and meet plaintiff's burden to show that defendant's actions may have been motivated by a discriminatory motive. Specifically, the fact that the plaintiff was discharged soon after he was injured on the job, reported his injury to his employer, and requested that the injury be reported to the State Insurance Fund, suggests that the defendant may have terminated the plaintiff to prevent him from eventually using his medical and disability benefits. By showing that his employer may have been illegally motivated in discharging him, the plaintiff has established a prima facie case that AWPI violated ERISA.

AWPI, on the other hand, has failed to meet its burden of showing a legitimate, nondiscriminatory reason for discharging the plaintiff from his employment. In fact, the defendants fail to address this issue at all. As a heading to Section D of their Memorandum in Support of Motion for Summary Judgment, the defendants state that "[t]he Alleged Grounds for de Jesus–Toledo's Dismissal were not a Pretext." But in that section, they fail to state what the nondiscriminatory grounds for plaintiff's termination were. Because the employer has not alleged a legitimate reason for the employee's discharge, the plaintiff need not proceed to the next step: showing that an alleged legitimate reason for plaintiff's discharge is pretextual.

### 5. Exhaustion of Remedies

In *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825–26 (1st Cir.1988), the First Circuit Court of Appeals states that exhaustion of remedies is required for claims which are purely contractual, but not for claims stating a statutory violation. We find that plaintiff's allegation of retaliatory discharge states a claim for a violation of 29 U.S.C. § 1140, a statutory violation which does not require the exhaustion of administrative remedies. In this case, plaintiff was unable to resort to any administrative remedies because of AWPI's own machinations. If we take plaintiff's allegations as true, AWPI refused to report his injury to the State Insurance Fund after the plaintiff repeatedly requested that it do so. In addition, AWPI prevented the plaintiff from exhausting the claims procedures for the benefit plans involved in this action by firing the plaintiff and prohibiting him from returning to work when he attempted to do so. It would be strange indeed to require an employee to exhaust benefit plan claims procedures when the employee may have been discharged in order to prevent him from filing a claim in the first place. In this context, we find that AWPI frustrated plaintiff's recourse to administrative remedies concerning medical and disability benefits by discharging him. Therefore, plaintiff's failure to make a claim for benefits does not bar this action.

### B. In Personam Jurisdiction

### 1. Service of Process and Due Process

While we find that plaintiff has presented a prima facie case for discriminatory discharge under § 510 of ERISA, we also find that that claim fails as to co-defendant American Home Products Corporation. We have personal jurisdiction over American Home Products, but no justification exists to pierce AHP's corporate veil. The plaintiff bears the burden of providing competent evidence to establish a prima facie showing of personal jurisdiction. As a part of this prima facie showing, the plaintiff must provide affirmative proof that the defendant can be served with process and that the due process clause of the Constitution is satisfied. *United Electrical Radio & Machine Workers v. 163 Pleasant Street Corp.*, 987 F.2d 39, 43–44 (1st Cir.1993) [2], citing *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir.1992).

To determine if in personam jurisdiction exists in a federal question case, we

---

**2.** This case was preceded by *United Electrical, etc. v. 163 Pleasant Street Corp.*, 960 F.2d 1080 (1st Cir.1992). Throughout this opinion, we refer to the first opinion as *163 Pleasant Street Corp. I* and to the second opinion, which we cite here, as *163 Pleasant Street Corp. II*.

must look to see if a federal statute authorizes extraterritorial service of process. When no federal statute exists allowing extraterritorial service, we must focus attention on state personal jurisdiction laws which are subject to Fourteenth Amendment limitations, including the minimum contacts doctrine. See *United Electrical, etc. v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1086 (1st Cir.1992) (minimum contacts doctrine, while imposing no direct state-by-state constraint on a federal court in a federal question case, acts indirectly as a governing mechanism for the exercise of personal jurisdiction when resort is made to state law of personal jurisdiction in the absence of a federal statute permitting service of process over a Scottish parent corporation). But when a federal statute authorizes extraterritorial service in a federal question case, the Constitution does not require "minimum contacts" with the specific forum for purposes of personal jurisdiction. *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 743 F.2d 947, 950 (1st Cir.1984); Contra *Nieves v. Houston Industries, Inc.,* 771 F.Supp. 159, 160 (M.D.La.1991) (decision did not address ERISA provision allowing extraterritorial service of process and proceeded to analyze case based on Louisiana long arm statute). Instead, the constitutional limits of a court's jurisdiction in this context are determined by the Fifth Amendment which only requires sufficient contacts with the United States as a whole. *163 Pleasant Street Corp. I,* 960 F.2d at 1085, citing *Lorelei Corp. v. County of Guadalupe,* 940 F.2d 717, 719 (1st Cir. 1991).

Although the plaintiff has not expressly addressed the issue of service, ERISA clearly authorizes extraterritorial service of process nationwide. 29 U.S.C. Section 1132(e)(2) states:

> Where an action under [ERISA] is brought in a district court of the United States ... process may be served in any other district where a defendant resides or may be found.

This section of ERISA clearly applies in this case. Compare *163 Pleasant Street Corp. I,* 960 F.2d at 1086 (although ERISA provides for nationwide service process, it does not provide for worldwide service of process; therefore, question of service of process over Scottish parent corporation must be determined, pursuant to Fed.R.Civ.P. 4(e), with reference to the law of the state in which the district court sits, that is, the state's long arm statute) and *Lorelei,* 940 F.2d at 720 (the statute underlying the federal question claim did not provide for nationwide service). Because the plaintiff may serve process on American Home Products anywhere in the nation pursuant to 29 U.S.C. Section 1132(e)(2) and Fed.R.Civ.P. 4(e), he has satisfied the requirement that "the basis for service of process returnable to a particular court ... be grounded within a federal statute or Civil Rule." *163 Pleasant Street Corp. I,* 960 F.2d at 1085. In addition, it cannot be contested that American Home Products has sufficient minimum contacts with United States to satisfy the broad due process standard of the fifth amendment. See *Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co.,* 743 F.2d 956 (1st Cir.1984) and *Whistler Corp. v. Solar Electronics, Inc.,* 684 F.Supp. 1126 (D.Mass.1988). Based on this discussion, we find that we have in personam jurisdiction over American Home Products under ERISA.

### 2. Piercing the Corporate Veil

█ The defendants claim that AHP is not AWPI's parent company. Allegedly A & H Holdings is the parent company. But plaintiff cites the AWPI Employee Handbook which indicates that AWPI is a separate division of AHP. Although, for the most part, defendants discuss the issue of corporate separateness within the context of the issue of personal jurisdiction, we will also consider it as a defense to piercing AHP's corporate veil. Compare *163 Pleasant Street Corp. II,* 987 F.2d at 43, n. 10, (defendants did not attempt to show that record developed on remand after first appeal was insufficient to support personal jurisdiction; instead they argued that corporate veil of parent corporation should not be pierced to hold parent liable for subsidiaries contractual obligations under ERISA). Both the defendant and the plaintiff have had a sufficient opportunity to brief the issue of corporate separateness between AHP and AWPI.

We find that American Home Products' corporate veil cannot be pierced in the circumstances of this case. Under ERISA, a federal court should apply a federal common law standard of corporate separateness, which although less rigorous than state common law counterparts, still demands a substantial showing. *163 Pleasant Street Corp. I*, 960 F.2d at 1092. For us to pierce American Home Products' corporate veil, the plaintiff must show three things: 1) that the parent and the subsidiary ignored the independence of their separate operations; 2) that some fraudulent intent exists on the parent's part; and 3) that a substantial injustice would be visited on the proponents of veil piercing should the court validate the corporate shield. *163 Pleasant Street Corp. I*, 960 F.2d at 1093. The First Circuit has indicated that fraud on the part of a parent corporation can be proved by "some cognizable showing that the parent corporation maintained the subsidiary to avoid its statutory responsibilities, acted in a blameworthy manner, looted the subsidiary, or so undercapitalized the subsidiary that the latter could not reasonably have been expected to meet its obligations." *163 Pleasant Street Corp. I*, 960 F.2d at 1093.

The plaintiff in this case has failed to allege any competent evidence that American Home Products has attempted to subvert ERISA's policies by reliance on the technicalities of the corporate form. The plaintiff suggests that American Home Products has ignored the independence of separate operations of AHP and AWPI and that AWPI is an agent or instrumentality of AHP because the Group Insurance and Retirement plan brochures were issued by AHP. The Employee Handbook issued by Ayerst–Wyeth Pharmaceuticals, Inc. states:

> Our plant combines the technologies of two major drug companies, Ayerst Laboratories and Wyeth Laboratories. Both are divisions of American Home Products Corporation, as is our own plant here in Guayama, Ayerst–Wyeth Pharmaceuticals Inc.

But the fact that the Group Insurance and Retirement Plan brochures bear the name of the parent corporation and include letters welcoming employees to the AHP Corpora-tion does not defeat the separateness of AHP and AWPI.

Even if we take plaintiff's allegations as true, they do not show a level of "confused intermingling" or "serious ambiguity" that indicate that AHP and AWPI were alter egos. In addition, the plaintiff has not shown any fraudulent intent on AHP's behalf. He has failed to show that Ayerst–Wyeth Pharmaceuticals, Inc. is a sham subsidiary; that AHP has undercapitalized AWPI; or that it intended to use AWPI as a shell. Finally, no substantial injustice would result from not piercing AHP's corporate veil. This case does not present a situation in which a subsidiary has gone bankrupt, thereby cutting off ERISA benefits to employees. Even if the plaintiff cannot continue his suit against AHP, he may still proceed as to AWPI.

### C. Pendent Jurisdiction

At this time, we will assert pendent jurisdiction although defendants ask us not to. ERISA preempts any state law that refers to or has connection with covered benefit plans and does not fall within a statutory exception even if the law is not specifically designed to affect such plans, or the effect is only indirect, and even if the law is consistent with ERISA's substantive requirements. *District of Columbia v. Greater Washington Bd. of Trade*, —— U.S. ——, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992). But ERISA does not preempt state law which has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability. *Greater Washington Bd. of Trade*, —— U.S. at —— n. 1, 113 S.Ct. at 583 n. 1. Because ERISA may possibly preempt plaintiff's state claims and because the parties have not addressed this issue in their submissions pursuant to the motion for summary judgment, we will exercise pendent jurisdiction without entering into the merits of the state claims.

### VII. Conclusion

In sum, we rule as follows:

1) we deny defendants' motion for summary judgment on the issue of federal question jurisdiction because we find that we have federal jurisdiction under

ERISA and various genuine issues of material fact exist as to AWPI's motivation in discharging the plaintiff from employment and the effect of workmen's compensation on eligibility for disability benefits;

2) we find that the complaint cannot stand as to American Home Products because we will not pierce AHP's corporate veil; and

3) under the circumstances, we exercise pendent jurisdiction over plaintiff's state claims.

Judgment will be entered accordingly, dismissing the action against AHP. The parties shall request a pre-trial conference with a Magistrate and shall proceed with discovery, to be completed in forty-five (45) days. Thereafter, we will schedule a status or trial setting conference.

**SO ORDERED.**