**Carolyn E. McMAHON, Plaintiff,**

**v.**

**DIGITAL EQUIPMENT CORPORATION, CORE, Inc., Plan Administrator of Digital Equipment Corporation Accident and Sickness Plan, Defendants.**

**Civil Action No. 95–12671–MLW.**

United States District Court,
D. Massachusetts.

Oct. 29, 1996.

have filed motions to dismiss plaintiff Carolyn E. McMahon's Amended Complaint to the extent that it purports to state claims against them. This Memorandum addresses only two issues raised by the motions: (1) Whether the federal Employee Retirement Income Security Act of 1974 ("ERISA") preempts the plaintiff's state law claims against DEC and CORE relating to a short-term disability plan[1] which DEC provided to the plaintiff as its employee; and (2) whether the plaintiff is barred from pursuing claims under Massachusetts General Laws ch. 93A, § 9 against DEC or CORE.

An Order ruling on the motions was entered on September 30, 1996 dismissing Counts VIII and IX of the Amended Complaint (the Chapter 93A counts) and dismissing the Amended Complaint to the extent that it purports to state claims under DEC's long-term disability ("LTD") plan against DEC as DEC, as opposed to defendant DEC in its capacity as Plan Administrator of Digital Equipment Corporation Accident and Sickness Plan,[2] on the grounds that the federal Employee Retirement Income Security Act of 1974 ("ERISA") preempts any claims under the LTD plan. In the Order, the Court denied the motions in all other respects without prejudice. This memorandum elucidates the Court's reasons for its decision. In sum, the Court finds that the plaintiff has sufficiently alleged facts supportive of a theory that DEC's short-term disability plan is exempted from ERISA as a "payroll practices" plan, such that her state law claims with respect to that plan are not preempted and may proceed. Further, the Court rules that the plaintiff's claims pursuant to Mass.Gen.Laws ch. 93A must be dismissed, those against DEC on substantive grounds and those against CORE on procedural grounds.

Marie Cheung–Truslow, Lecomte, Emanuelson, Motejunas & Doyle, Quincy, MA, for Carolyn E. McMahon.

William A. Worth, Douglas T. Schwartz, Elena E. Salzman, Peckham, Lobel, Casey, Prince & Tye, Boston, MA, for Digital Equipment Corporation Securities Litigation.

Douglas T. Schwartz, Peckham, Lobel, Casey, Prince & Tye, Michael J. McHugh, Rich, May, Bilodeau & Flaherty, Boston, MA, for Plan Administrator of Digital Equipment Corporation Accident and Sickness Plan.

Mark E. Cohen, McCormack & Epstein, Boston, MA, for CORE, Inc.

### MEMORANDUM ON DEFENDANT DIGITAL EQUIPMENT CORPORATION'S MOTION TO DISMISS AMENDED COMPLAINT (# 11) AND DEFENDANT CORE, INC.'S MOTION TO DISMISS AMENDED COMPLAINT (# 7)

COLLINGS, United States Magistrate Judge.

### I. INTRODUCTION

Defendants Digital Equipment Corporation ("DEC") and CORE, Inc. ("CORE")

### II. THE FACTS AS ALLEGED

In brief, plaintiff alleges that she was hired by DEC in April, 1985 as a marketing spe-

---

**1.** In this Memorandum, the short-term disability plan will also be referred to as the STD plan and the long term disability plan will be referred to as the LTD plan.

**2.** The Plan Administrator is not a party to the motions.

cialist in its Tewksbury, Massachusetts office. (Amended Complaint, ¶ 5) In 1990, she was offered a position as a marketing consultant at a different location in Marlboro, Massachusetts. (*Id.*, ¶ 8) She took the new position but was worried that the longer commute would aggravate a preexisting back problem. (*Id.*, ¶ 11) She claims that DEC agreed to arrange for her relocation should she not be able to make the commute to Marlboro because of these problems. (*Id.*)

Plaintiff claims that from the spring of 1991 to the spring of 1992, her back problems worsened. (*Id.*, ¶¶ 12, 15) On June 2, 1992, she was placed on short-term disability leave; the maximum period an employee could be on short-term disability leave was six months. (*Id.*, ¶ 21) Disputes arose as to how long the plaintiff should remain out on short-term disability. In any event, DEC told her to report for work on September 8, 1992. (*Id.*, ¶ 31) On September 14, 1992, DEC notified her that her employment would end on November 20, 1992 pursuant to DEC's reduction of work force plan. (*Id.*, at 38)

### III. ERISA PREEMPTION

#### A. Criteria for "Payroll Practices" Exemption

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). "[A] law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983)). A claim under a state law is preempted by ERISA where, for purposes of determination, "the court's inquiry must be directed to the plan" or if the cause of action conflicts directly with ERISA. *Ingersoll–Rand*, 498 U.S. at 140, 142, 111 S.Ct. at 483–84, 484–85, *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 793 (1 Cir.1995).

The defendants argue that DEC's short-term disability plan as well as its long-term disability plan are employee welfare plans covered by ERISA, such that all of the plaintiff's state law claims that relate to them are preempted. In relevant part, the ERISA statute defines an "employee welfare plan" or "welfare plan" to include:

> "any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance of otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death ..."

29 U.S.C. § 1002(1).

The plaintiff contends that DEC's STD Plan is not an employee welfare plan and falls within an exception to the general rule requiring preemption.[3] Regulations promulgated by the Secretary of Labor provide that ERISA does not govern certain employer "payroll practices":

> (b) For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include ...
>
> (2) Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) ...

29 C.F.R. § 2510.3–1(b)(2).

Courts have recognized that the Secretary of Labor acted within his statutory authority in establishing this exception. *Shea v. Wells Fargo Armored Service Corporation*, 810 F.2d 372, 376 (2 Cir.1987), *California Hospi-*

---

**3.** The plaintiff also alleges that the STD Plan "is believed to be an employee welfare plan" covered by ERISA (Amended Complaint, ¶ 109) She correctly notes that this is an alternative pleading authorized by Rule 8(e)(2) of the Federal Rules of Civil Procedure which does not affect her allegation that the STD Plan is exempted from ERISA's coverage.

*tal Association v. Henning,* 770 F.2d 856, 859 (9 Cir.1985), *modified,* 783 F.2d 946 (9 Cir.1986), *cert. denied,* 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 564 (1986), *Abella v. W.A. Foote Memorial Hospital, Inc.,* 740 F.2d 4, 5 (6 Cir.1984) (*per curiam* ).

The courts have established criteria for determining whether particular sick leave plans and disability plans constitute "payroll practices" not governed by ERISA. In *Shea,* the Court affirmed a dismissal of ERISA claims where an employer paid sick leave (1) out of its general assets, and not out of any separate account, fund or trust (2) at the employee's usual rate of compensation (3) for periods of time allowed as absences from employment for medical reasons (4) in accordance with traditional practices and (5) without additional conditions or contingencies of any kind. *Shea,* 810 F.2d at 376.

■ The last criterion, the absence of additional conditions or contingencies of any kind, is not stated in the regulation, and may not be a requirement. *United Automobile, Aerospace and Agricultural Implement Workers of America, Local 33 v. R.E. Dietz Co.,* 996 F.2d 592, 597 (2 Cir.1993), *Martin Marietta Energy Systems, Inc. v. Industrial Commission of Ohio,* 843 F.Supp. 1206, 1212 (S.D.Ohio 1994). In any event, when a sick leave or disability plan permits employers to require employees to have medical examinations, this is not a "contingency" that will prevent such a plan from being a "payroll practice." *Martin Marietta,* 843 F.Supp. at 1212.

Reference to these criteria is made here not to limit the Court to factors it may later consider in determining whether the STD Plan in fact is a "payroll practice,"[4] but rather to indicate what types of allegations are relevant to establishing a cause of action for violation of a payroll practices plan.

### B. Sufficiency of Plaintiff's Allegations

■ The plaintiff has not alleged in so many words that the STD Plan was a "payroll practice" or that it was exempt from ERISA coverage. *Cf. Toledo v. Ayerst–Wyeth Pharmaceutical, Inc.,* 852 F.Supp. 91, 98 (D.P.R.1993) (separate count alleging violation of "payroll practice" plan). She had no obligation, however, either to state her legal theory or anticipate that the defendants would raise a defense of ERISA preemption. *Luckett v. Rent–A–Center, Inc.,* 53 F.3d 871, 873 (7 Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 420, 133 L.Ed.2d 337 (1995). A complaint will survive a motion to dismiss "... if the plaintiff sets forth 'sufficient factual allegations to state a claim showing that she is entitled to relief' under some viable legal theory." *Fitzgerald v. Codex Corp.,* 882 F.2d 586, 589 (1 Cir.1989), (quoting *Rohler v. TRW, Inc.,* 576 F.2d 1260, 1264 (7 Cir.1978)).

With respect to the STD Plan, the plaintiff alleges in the Amended Complaint as follows:

> Defendant DEC agreed to provide and did provide a Short Term Disability Plan ... to its full time employees who were unable to work as a result of a non-occupational illness or accident. The STD Plan provided 100% of the employee's base salary for up to 26 weeks.

(Amended Complaint, ¶ 16) She further alleges that the STD Plan is "a self insured insurance plan." (*Id.,* ¶ 17)

The Amended Complaint alleges that DEC contracted with CORE to manage and administer the STD Plan during the plaintiff's employment with DEC and that CORE was responsible for determining her initial and continuing eligibility for short term disability benefits. (*Id.,* ¶¶ 18, 19) Under the STD Plan, the plaintiff alleges, an employee's doctor initiates a claim by telephoning CORE and providing requested information about the employee's medical condition. (*Id.,* ¶ 20) In the event of a disagreement between the employee's doctor and CORE as to the date

---

**4.** Other factors, for example, are the degree to which DEC held out the STD Plan to its employees or others as an ERISA-covered plan, and the extent to which DEC or CORE kept records and otherwise administered the STD Plan consistent with ERISA's requirements. *See Toledo v. Ayerst–Wyeth Pharmaceutical, Inc.,* 852 F.Supp. 91,

98 (D.P.R.1993). Relevant to the question of whether payment of benefits is made from general assets of an employer is whether benefits are paid in the same paycheck as regular earnings. *Alaska Airlines Incorporated v. Oregon Bureau of Labor,* 884 F.Supp. 393, 397 (D.Or.1995).

on which the employee should return to work, the plaintiff alleges that the STD Plan requires CORE to set up an independent medical examination. (*Id.*, ¶ 24) The actual terms of the STD Plan are not further alleged, and the text of the plan is not part of the record before this Court.[5]

As they stand, the allegations are sufficient to keep alive the question of whether the exemption applies. While payment of disability benefits from an employer's general assets by itself will not determine that a plan is a "payroll practice," a plan cannot be a "payroll practice" unless payments in fact come from an employer's general assets. *See Massachusetts v. Morash,* 490 U.S. 107, 114, 109 S.Ct. 1668, 1672–73, 104 L.Ed.2d 98 (1989) (regarding payment of vacation pay from general assets under 29 C.F.R. § 2510.3–1(b)(3)(i)), *California Hospital Assoc.,* 770 F.2d at 861. The plaintiff has not alleged that the STD Plan benefits were paid from DEC's general assets, but she has alleged that the Plan was self insured. Although stated in a different context, the term "self-insured" has been stated to mean funded by the employer. *See FMC Corporation v. Holliday,* 498 U.S. 52, 65, 111 S.Ct. 403, 411, 112 L.Ed.2d 356 (1990) (Stevens, J. dissenting). *See also Suggs v. Pan American Life Insurance Co.,* 847 F.Supp. 1324, 1347–48 (S.D.Miss.1994) (using "self-funded" and "self-insured" interchangeably). While the allegation could be more specific, it is adequate as it stands. In any event, DEC, as the moving party has the "heavy" burden of demonstrating that under no legal theory can the facts as stated in the amended complaint be said to state a claim. *General Electric Company v. Lyon,* 894 F.Supp. 544, 547 (D.Mass.1995) citing *Knight v. Mills,* 836 F.2d 659, 664 (1 Cir.1987). DEC has not met that burden.

In sum, the plaintiff alleges, in essence, that the STD Plan provided for payments (1) from funds provided by the employer itself (2) to full-time employees absent from work because of illness or accident (3) at the employees' usual rate of compensation (4) for a specified period (roughly 6 months). The only "contingency" alleged in the Amended Complaint, the requirement to have a medical examination by an independent physician, is one which the courts already recognize as being consistent with "payroll practices" plans. These allegations sufficiently state a cause of action for violation of a payroll practices plan consistent with the type of criteria listed in *Shea* and other cases.

DEC argues that, regardless of whether the STD Plan is covered by ERISA, any recovery by the plaintiff will require reference to the long-term disability plan which is covered by ERISA, and therefore all of plaintiff's claims must be dismissed. (DEC's Reply Memorandum, p. 2–5) In particular, DEC contends that the existence of the long-term disability plan is crucial to the plaintiff's state law claims, and that computation of damages necessarily would require that "the court's inquiry must be directed" to the long-term plan. *See Carlo v. Reed Rolled Thread Die Co.,* 49 F.3d 790, 793 (1 Cir.1995), (quoting *Ingersoll–Rand,* 498 U.S. at 140, 111 S.Ct. at 483–84). (DEC's Reply Memorandum, p. 4–5)

In the *Carlo* case, a former employee sought damages from his employer for misrepresentation with regard to the amount of benefits to which he was entitled under an early retirement plan covered by ERISA. The plaintiff argued that he was suing on the basis of the false statements made, and not under the plan. The First Circuit found that the state law claim "related to" and had "a connection with or reference to" the early retirement plan because part of the damages to which he claimed entitlement ultimately depended on an analysis of the terms of the plan. *Id.* at 793–94, (quoting *Ingersoll–*

---

5. To its Reply Memorandum, DEC attached copies of documents it identified as the Accident and Sickness Benefits Policy, i.e., the STD Plan, and the Long-term Disability Plan. The plaintiff moved to strike these documents on the grounds that it was inappropriate for the defendants to introduce facts beyond the pleadings on a motion to dismiss, the authenticity of the documents has not been verified and it is not clear that these plans were in effect at the time of the plaintiff's disability. On September 3, 1996, this Court allowed the plaintiff's motion to strike the documents and all references to them. Accordingly, this Court will not consider references made to the documents in the motion papers submitted by any party.

*Rand,* 498 U.S. at 139, 111 S.Ct. at 482–83). The court in the *Carlo* case cited *Vartanian v. Monsanto Co.,* 14 F.3d 697, 700 (1 Cir. 1994) for the proposition that ERISA preemption is mandated where the existence of a plan covered by ERISA "is inseparably connected to any determination of liability" under a state law claim. *Carlo,* 49 F.3d at 794–795.

In the instant case, the plaintiff alleges a chain of incidents beginning with wrongful handling of her claim under the STD Plan, forcing her to return to work before her health had improved sufficiently, thereby causing her to be subject to termination whereas, according to DEC's own personnel policies, she would not have been terminated if she had stayed out on disability. (Amended Complaint, ¶¶ 18, 24–26, 31–46) The crux of her Amended Complaint is that if DEC and CORE properly had determined her eligibility for short-term benefits, she would not have been laid off and would have kept a job providing continuing compensation and benefits.

More specifically, the plaintiff alleges that she began a short-term disability leave effective June 1, 1992 which was extended to August 31, that DEC ordered her back to work effective September 8, and that she was terminated on September 14, effective November 20, her position having actually been eliminated on August 18. (*Id.,* ¶¶ 21, 29, 31, 38–39) All of these dates fall within the 26-week period beginning June 1, 1992 during which the STD Plan was to provide benefits. The plaintiff further alleges that DEC failed to provide her with materials to begin the process of claiming long-term disability benefits. (Amended Complaint, ¶¶ 48–49) At the time she was terminated, she had not even applied for long-term benefits. Finally, she also alleges that an orthopedic surgeon recommended that her leave be extended to December 31, 1992, and that she would have been entitled to benefits under the long-term disability plan beginning November 28. (*Id.,* ¶¶ 23, 90)

Reviewing the plaintiff's allegations as a whole, the holding in *Carlo* does not mandate a finding at this point in the litigation that the plaintiff's claims regarding the STD Plan are so inseparably connected with those regarding the long-term disability plan that they must be preempted by ERISA. It is the existence of the STD Plan, not the long-term disability plan, that is "inseparably connected to any determination of liability" of her claims based on the STD Plan. The factual record before the Court is not sufficiently developed to determine whether or not calculation of damages on plaintiff's claims relating to the STD Plan or to her termination would require reference to the long-term disability plan. How long her disability actually extended, for example, is not alleged. Accordingly, this Court need not yet address the legal issue whether ERISA preemption reaches so far as to exclude claims with respect to a short-term payroll practices plan, specifically exempted from ERISA, simply because part of the calculation of damages requires reference to a different long-term disability plan covered by ERISA.

For its part, CORE cites *Toledo v. Ayerst–Wyeth Pharmaceutical, Inc.,* 852 F.Supp. 91, in support of its contention that the STD Plan is not a payroll practices plan. Its arguments based on *Toledo* fail for a number of reasons. First, it is true, as CORE contends, that *Toledo* states that the fact that a disability plan is funded from an employer's general assets is not alone enough to exempt the plan from ERISA coverage. *Id.* at 99. (CORE's Reply Memorandum, p. 3) Plaintiff's allegations are not limited to that single fact, however, but rather also address other criteria of the payroll practices exemption.

Second, CORE complains that the "payroll practices" exemption was intended to apply only to plans designed to replace an employee's normal compensation due to absences from work resulting from medical problems that are foreseeably temporary. *Toledo,* 852 F.Supp. at 98. (CORE's Reply Memorandum, p. 4) Specifically, CORE argues that "the plaintiff has not and cannot plead facts which are sufficient to demonstrate that the short-term disability benefits which she was paid by DEC resulted from medical problems that were 'foreseeably temporary.'" (*Id.*) To illustrate its point, CORE notes that the plaintiff's doctor recommended a six-month

extension of her medical leave after she already had been out of work for a month. (*Id.*)

■ CORE's argument misses the mark. It is the duration of benefits provided by a plan, and not the length of any particular employee's absence due to medical disability, which is relevant to a determination of whether the plan as it applies to all employees is a "payroll practices" plan.

The plaintiff has alleged that the STD plan provided for benefits for up to 26 weeks. (Amended Complaint, ¶ 16) Numerous advisory opinions by the Department of Labor have found that short-term disability plans providing for payment of sick leave benefits or salary continuation for periods comparable to or in excess of the 26–week period allowed under the STD Plan were "payroll practices." As the plaintiff points out, some of these opinions are listed in the *Toledo* decision as examples of "foreseeably temporary" coverage. *See* U.S. Dept. of Labor Opinion Letters 93–2A (Jan. 12, 1993), 1993 WL 68525 (E.R.I.S.A.) (maximum benefit period of 180 days); 82–44A (Aug. 27, 1982), 1982 WL 21227 (E.R.I.S.A.) (medical leave of absence granted for up to 30 days, with additional 30 day extensions, up to a maximum of 6 months). One opinion cited in *Toledo* in particular describes an arrangement virtually identical to the one alleged by the plaintiff here. *See* U.S. Dept. of Labor Opinion Letter 83–37A (July 18, 1983), 1983 WL 22522 (E.R.I.S.A.) (benefits under short-term plan paid from general assets for a maximum period of 6 months, after which employees enrolled in contributory long-term disability plan may begin to collect benefits). *See also* U.S. Dept. of Labor Opinion Letters 93–02A (Jan. 12, 1993), 1993 WL 68525 (E.R.I.S.A.) (60% of compensation for up to 180 consecutive days); 93–27A (Oct. 12, 1993), 1993 WL 421012 (E.R.I.S.A.) (Salary Continuation Plan providing for 100% rate of compensation for up to 26 weeks, and Short-term Disability Plan providing for 65% of average biweekly compensation up to $1,400 biweekly for up to 26 weeks), 93–20A (July 16, 1993), 1993 WL 323133 (E.R.I.S.A.) (maximum benefit of 100% salary for 52 weeks), 92–18A

(Sept. 30, 1992), 1992 WL 328699 (E.R.I.S.A.) (60%–100% of compensation for 26 weeks).

Finally, CORE's reliance on the *Toledo* decision as precedent for a finding of ERISA preemption seems misplaced since the Court in that case notes twice that the parties had not yet raised the issue of preemption. *Toledo*, 852 F.Supp. at 94, 103. The Court found that disability and health plans covered by ERISA did exist, but also found that the plaintiff had alleged a separate and alternative cause of action for violation of a payroll practice plan. *Id.* at 99. The Court itself recognized preemption as an issue that would need to be resolved and asserted pendent jurisdiction over the state claims pending a determination of the preemption question. *Id.* at 94, 103.

In short, on the basis of the record at this stage of the proceedings, I rule that the defendants have not met their burden of demonstrating that ERISA preempts the plaintiff's state law claims related to the STD Plan, or, alternatively, that the exemption from ERISA upon which the plaintiff relies is either insufficiently pleaded or not applicable.

### IV. CLAIMS PURSUANT TO MASS.GEN.LAWS ch. 93A, § 9

#### A. Claims against DEC

■ The plaintiff's claims against DEC pursuant to Mass.Gen.Laws ch. 93A, § 9, as set forth in Count VIII, must be dismissed for substantive reasons. The relationship between DEC and the plaintiff is one between an employer and an employee. Such claims concerning the terms and conditions of employment do not arise in the context of trade or commerce between parties at arms' length, but rather arise from private conflicts internal to a company, and are therefore outside the scope of Mass.Gen.Laws ch. 93A. *Falmouth Ob–Gyn Assocs., Inc. v. Abisla*, 417 Mass. 176, 177, 629 N.E.2d 291, 292 (n. 1) (1994), *Manning v. Zuckerman*, 388 Mass. 8, 10–15, 444 N.E.2d 1262, 1263–66 (1983).

The plaintiff cannot save the Chapter 93A claims by alleging that DEC acted as an insurer and that she was an insured. Chap-

ter 93A provides for a private right of action under Section 9 for a consumer aggrieved by unfair settlement practices by an insurer as delineated in Mass.Gen.Laws ch. 176D. The plaintiff has alleged, however, that the STD Plan was self insured. (Amended Complaint, ¶ 17). An action under Mass.Gen.Laws ch. 93A and ch. 176D is precluded here because Mass.Gen.Laws ch. 176D applies only to any self-insurer "which is engaged in the business of insurance." Mass.Gen.Laws ch. 176D, § 1(a).

Self-insuring employers providing benefits to employees do not thereby become insurance companies for purposes of Mass.Gen. Laws ch. 176D. *See Bertrand v. Quincy Market Cold Storage & Warehouse Company,* 728 F.2d 568, 571 (1 Cir.1984) (workers' compensation), *Anzalone v. Massachusetts Bay Transportation Authority,* 403 Mass. 119, 122, 526 N.E.2d 246, 248 (1988) (same). Accordingly, assuming the truth of the plaintiff's allegation, DEC did not become an "insurer" under the terms of Mass.Gen.Laws ch. 176D by funding a short-term disability plan for its employees, and cannot be sued by an employee in the capacity of an insured.

### B. Claims against CORE

This Court need not determine whether the plaintiff's Chapter 93A claims, brought pursuant to Mass.Gen.Laws 93A, § 9, against CORE contained in Count IX can survive on substantive grounds because they cannot survive on procedural grounds. The plaintiff has not alleged that she sent a 30–day demand letter to CORE, a prerequisite to bringing a suit under Mass.Gen.Laws ch. 93A, § 9. *Entrialgo v. Twin City Dodge,* 368 Mass. 812, 813, 333 N.E.2d 202, 203 (1975). Such a failure is fatal on a motion to dismiss. *City of Boston v. Aetna Life Ins. Co.,* 399 Mass. 569, 574, 506 N.E.2d 106, 109 (1987), *later proceeding,* 35 Mass.App.Ct. 318, 619 N.E.2d 622 (1993), *summary op.,* 22 M.L.W. 72 (1993).

### V. CONCLUSION

For all of the above-stated reasons, the Court on September 30, 1996 issued an Order (1) ALLOWING Defendant Digital Equipment Corporation's Motion to Dismiss Amended Complaint (# 11) to the extent of dismissing Count VIII of the Amended Complaint and dismissing the Amended Complaint to the extent that it purports to state claims under Digital Equipment Corporation's long-term disability plan and (2) ALLOWING Defendant Core, Inc.'s Motion to Dismiss Amended Complaint (# 7) to the extent of dismissing Count IX of the Amended Complaint and (3) otherwise DENYING both motions without prejudice.