**Carolyn E. McMAHON, Plaintiff,**

v.

**DIGITAL EQUIPMENT CORPORATION, Core, Inc., Plan Administrator of Digital Equipment Corporation Accident and Sickness Plan, Defendants.**

**Civil Action No. 95–12671–MLW.**

United States District Court, D. Massachusetts.

March 17, 1998.

Mark E. Cohen, McCormack & Epstein, Boston, MA.

Marie Cheung–Truslow, Lecomte, Emanuelson, Motejunas & Doyle, Quincy, MA, for Plaintiff.

David C. Casey, Douglas T. Schwarz, William A. Worth, Elena E. Salzman, Boston, MA, Beverly A. Kogut, Peckham, Lobel, Casey, Prince & Tye, Boston, MA, Michael J. McHugh, Rich, May, Bilodeau & Flaherty, Boston, MA, Brian C. Duffey, McCormack & Epstein, Boston, MA, for Defendants.

## MEMORANDUM AND ORDERS ON MOTIONS OF DEFENDANTS PURSUANT TO RULE 56(b), FED. R. CIV. P., FOR SUMMARY JUDGMENT (## 70, 72)

COLLINGS, United States Magistrate Judge.

### I. Introduction

Presently before the Court for resolution are the defendants Digital Equipment Corporation ("DEC"), Plan Administrator of Digital Equipment Corporation Accident and Sickness Plan ("the Administrator"), and CORE, Inc.'s ("CORE") motions for summary judgment. Plaintiff Carolyn E. McMahon ("McMahon") has asked the Court to strike certain exhibits submitted by the defendants in support of their motions. Likewise, CORE has moved to strike an affidavit submitted by McMahon in her opposition to the motions for summary judgment.

The Court has ruled on the motions to strike, and with the record now determined, the Court finds that the undisputed facts show that no genuine issue of material fact exists and defendants are entitled to judgment as a matter of law. More specifically, the Court finds that the short-term disability plan ("STD" or "the plan") which is the subject of this lawsuit is an "employee welfare benefit plan" covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and not a "payroll practice" exempted from ERISA coverage under 29 C.F.R. § 2510.3–1 et seq. The Court further finds that the state law claims "relate to" the ERISA plan. Thus, McMahon's state law claims are preempted. Further, her ERISA claim against the Administrator is barred for failure to pursue her administrative remedies.

### II. Uncontroverted Facts

The facts which form the basis for McMahon's claim to relief were briefly summarized by this Court in its opinion dated October 29, 1997. See McMahon v. Digital Equip. Corp., 944 F.Supp. 70, 71–72 (D.Mass., 1996). Essentially, McMahon was hired by DEC in April 1985 as a marketing specialist. In June 1992, she was placed on short-term disability ("STD") leave due to back problems. Under DEC's STD plan, an employee could remain on paid leave for a period of up to six months. McMahon was ordered back to work on September 8, 1992; she says this violated her right to continue receiving STD benefits, since she claims she was still disabled at that time.[1] On September 14, 1992, DEC notified McMahon that her employment was being terminated as of November 20, 1992, pursuant to a reduction of workforce plan. Company policy provided that an employee would not be subject to a reduction of workforce plan as long as that employee remained on STD. McMahon claims that had she not been improperly ordered back to work on September 14, she would have remained on STD—and not subject to the reduction in workforce plan—until such time as she would have become eligible to receive long-term disability benefits. She claims the administrator violated her rights under ERISA, and she claims DEC and CORE[2] are liable to her under state law for breach of contract, negligence, and/or intentional interference with an advantageous business relationship.

A "Benefits Book" provided to DEC employees summarizes the benefits available to employees under both the short-term and

---

1. McMahon's physician apparently reported that while she was physically capable of doing her work, she was not capable of making the drive to and from work. DEC representatives opined that this did not qualify as a "disability," so she was ordered back to work.

2. CORE managed the STD plan for DEC.

long-term disability plans provided by DEC. (# 98, Exh. O) Immediately following those summaries appears this statement:

As an employee, you are guaranteed cer-tain information about the administration of your employee benefit plans and certain rights with regard to these plans under the Employee Retirement Income Security Act (ERISA).

# 98, Exh. O at 6.3.

In a later section of the Benefits Book, the following statement appears:

Your Digital benefit plans are on file with the Department of Labor under Digital's employer Identification Number 04–2226590. The plan numbers, as assigned by Digital, are:

\* \* \* \* \* \*

Accident and Sickness/Salary Continuation Plan 502

\* \* \* \* \* \*

The disability plans within the Digital ben-efit program are welfare plans. The Acci-dent and Sickness Plan and the Salary Continuation Plan are self-insured by Digi-tal.

# 98, Exh. O at 14.2–14.3.

The procedures for challenging the denial of a claim under any of the benefit plans also are set out in the Benefits Book. (*Id.* at 14.6–14.7).

DEC filed two Internal Revenue Service Forms 5500 for the years 1991 and 1992.[3] Those forms show they were submitted for Plan 502 pursuant to the requirements of ERISA. The 1991 form (# 74, Exh. R) shows Plan 502 was covered by a fidelity bond in the amount of $500,000. (*Id.* at 5) An attachment to the 1991 form shows that the Plan is funded (at least in part)[4] by an insurance contract from John Hancock Mutu-al Life Insurance. (*Id.* at 8) The 1992 form (# 74, Exh. S) shows Plan 502 was again covered by a fidelity bond in the amount of $500,000, (*id.* at 5), and funded in part by the

John Hancock policy, (*id.* at 7); the form also shows the plan was funded at least in part by a trust fund at Shawmut Bank in Boston. (# 74, Exh. S at 2)

*III. Summary Judgment Standard*

When considering whether to grant sum-mary judgment, the Court must determine whether:

. . . the pleadings, depositions, answers to interrogatories, and admissions on file, to-gether with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). In making this assess-ment, the Court must "accept all reasonable inferences favorable to the nonmovant." *In-ternational Ass'n of Machinists v. Winship Green Nursing Ctr.,* 103 F.3d 196, 205 (1 Cir., 1996); *see also Lawton v. State Mut. Life Assurance Co. of America,* 101 F.3d 218, 222–23 (1 Cir., 1996); *Borschow Hosp. & Medical Supplies v. Cesar Castillo, Inc.,* 96 F.3d 10, 12 (1 Cir., 1996); *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 253 (1 Cir., 1996); *One Nat'l Bank v. Antonellis,* 80 F.3d 606, 608 (1 Cir., 1996).

A factual dispute which is neither "genu-ine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liber-ty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a factual dispute is "genuine", the Court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248; *see also Serrano–Cruz v. DFI Puerto Rico, Inc.,* 109 F.3d 23, 25 (1 Cir., 1997); *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1 Cir., 1996); *Roche,* 81 F.3d at 253. In weighing whether a factual dispute is "material", the Court must examine the sub-stantive law of the case, because "only dis-putes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary

---

**3.** It is not entirely clear which of the two forms is relevant to McMahon's claim for STD benefits.

**4.** McMahon argues that the insurance contract in question only covered Plan beneficiaries working in New York, and that employees working in

Massachusetts—including McMahon—were paid STD benefits from the general assets of DEC. For purposes of this motion, the Court assumes this is true.

judgment." *Anderson,* 477 U.S. at 248; *see also Vinick v. Commissioner of Internal Revenue,* 110 F.3d 168, 171 (1 Cir., 1997); *Sanchez,* 101 F.3d at 227; *Roche,* 81 F.3d at 253. "Thus the substantive law defines which facts are material." *Sanchez,* 101 F.3d at 227 (citing *Anderson,* 477 U.S. at 247–48).

Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings. *See International Ass'n of Machinists,* 103 F.3d at 205 (quoting *Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1 Cir., 1992))("The core purpose of the summary judgment procedure is to 'pierce the boilerplate of the pleadings' and evaluate the proof to determine whether a trial will serve any useful purpose."). Rather, Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### IV. Analysis

DEC and CORE argue summary judgment is in order in part [5] because McMahon's state law claims are preempted by ERISA. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C. § 1144(a). The Court will first consider whether the STD plan in question was an "employee benefit plan." If the plan is an "employee benefit plan" under ERISA, the Court must then consider whether the state law claims "relate to" that plan.

#### A. "Employee Benefit Plan" vs. "Payroll Practices"

DEC and CORE argue the STD plan is an "employee benefit plan" under ERISA. ERISA states that "employee benefit plans" include "employee welfare benefit plans." 29

U.S.C. § 1002(3). An "employee welfare benefit plan" is:

> any plan, fund, or program which . . . is . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death . . . .

29 U.S.C. § 1002(1). The plan in question here clearly was established by DEC in order to provide benefits in the event of a sickness, accident or disability.

However, some plans providing for these kinds of benefits are exempted from the scope of ERISA. Title 29 C.F.R. § 2510.3–1(b)(2) provides as follows:

> (b) for purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include . . .
>
> (2) Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment). . . .

In its Memorandum and Order dated October 29, 1996, this Court determined that McMahon had alleged the plan in question was a payroll practices plan and that her allegations were sufficient to withstand defendants' motions to dismiss. *See McMahon,* 944 F.Supp. at 73–74. Now that discovery is completed, the Court must determine whether the facts support her allegation.

▆▆▆▆ The facts show, to the contrary, that DEC's STD plan is *not* a payroll practices plan under 29 C.F.R. § 2510.3–1(b)(2). In deciding whether a particular plan is subject to the payroll practices exception, a

---

**5.** DEC and CORE argue alternatively that the undisputed facts demonstrate McMahon's state law claims lack substantive merit. The Court

need not reach this issue, since the state law claims are preempted by ERISA. *See* sections IV.A. & IV.B., *infra.*

court must consider, among other factors, whether benefits under the plan are paid out of the general assets of the corporation.[6] *Shea v. Wells Fargo Armored Serv. Corp.,* 810 F.2d 372, 376 (2 Cir., 1987). Here, McMahon contends the STD plan paid her benefits out of general assets. Indeed, the uncontroverted facts show that the fund was financed only in part by an insurance policy and/or a trust. The Court will assume for purposes of these motions that at least some employees (including McMahon) were paid out of general assets. *See* fn. 4, *supra.*

But DEC's STD plan differed from other short-term disability plans which courts have held to be payroll practices. *See, e.g., Williams v. Great Dane Trailer Tenn., Inc.,* 19 Empl.Ben. Cases 1403, 1995 WL 447268 *2 (W.D.Tenn., 1995) (short-term disability plan funded by general assets was a payroll practice); *Martin Marietta Energy Sys., Inc. v. Industrial Comm'n,* 843 F.Supp. 1206, 1211–12 (S.D.Ohio, 1994) (same). Not only was the plan partially funded by insurance and/or a trust, but it was secured by a $500,-000 fidelity bond. In this way, the plan more closely resembled an employee welfare benefit plan covered by ERISA.

■ Moreover, even if the STD benefits were fully paid from the general assets of DEC, the plan might still be an ERISA-covered plan. *Toledo v. Ayerst–Wyeth Pharmaceutical, Inc.,* 852 F.Supp. 91, 99 (D.P.R., 1993) ("If [defendant] funded the disability plan from general assets, that fact alone would not exempt the plan from ERISA coverage.") (citations omitted); *see also McMahon,* 944 F.Supp. at 73 n. 4 (in determining whether the plan is a payroll practice, court may consider factors other than whether benefits were paid from general assets). More significant in this particular case is the fact that DEC treated the plan as one covered by ERISA and assured employees they were entitled to ERISA's protections. *See McMahon,* 944 F.Supp. at 73 n. 4 (court will also consider degree to which DEC held out the plan to its employees and others as an ERISA-covered plan and the extent to which DEC and/or CORE kept records and otherwise administered the plan consistent with ERISA's requirements). In the "Benefits Book" provided to employees, DEC informed its employees that the STD plan was an ERISA plan, and it assured employees that ERISA coverage entitled them to certain information about the plan and gave them certain rights with regard to the plan. The Benefits Book informed employees that fiscal records were maintained for the plan, it provided the name and address of the plan administrator to whom questions could be directed, and it set out the appeals procedures available to employees in the event benefits were denied.

Furthermore, DEC represented to the Department of Labor and the Internal Revenue Service that the plan was an ERISA-covered plan. DEC submitted the necessary forms to the IRS, and it provided to employees its employer identification number and the plan number used in the DOL filings. Clearly DEC treated the plan as an ERISA-covered plan and represented to employees that as beneficiaries of that plan, they were entitled to all the protections of ERISA.

Given these facts, it would seem odd to treat the plan as something other than an ERISA-covered plan. Indeed, were the roles reversed here, and DEC faced with an employee attempting to *invoke* her ERISA rights under the plan, it is doubtful that DEC could argue the plan was not covered by ERISA. DEC assured employees they were entitled to ERISA protections, and it took at least some steps to ensure employees would be paid the benefits owed them, should

---

6. In a case addressing whether vacation benefits, payable from general corporate assets, were properly excepted from ERISA, the Supreme Court explained the purpose of excluding from ERISA most benefits payable out of the general assets of a corporation:

In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds.... [As for the types of benefits included in 29 C.F.R. § 2510.3–1(b),] they present none of the risks that ERISA is intended to address. If there is a danger of defeated expectations it is no different from the danger of defeated expectations of wages for services performed—a danger Congress chose not to regulate in ERISA.

*Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989).

DEC's general assets prove insufficient. This Court's ruling should affirm the expectations those assurances created, for both the employee and the employer.[7] The STD plan in question here was an ERISA-covered plan, so the Court must now consider whether ERISA preempts McMahon's state law claims.

### B. ERISA Preemption

■ Title 29 U.S.C. § 1144(a) provides in part that "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." DEC and CORE contend that McMahon's state law claims are preempted under this provision of ERISA. The Court agrees.

The Supreme Court has interpreted section 1144(a) broadly. In *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Court said that a state law "relates to" an ERISA-covered plan, and is therefore preempted under § 1144(a), "if it has a connection with or reference to such a plan." *Id.* 498 U.S. at 139 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). The Court further stated that a state law may "relate to" a plan "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). In *Ingersoll*, the Court decided that a state law claim for wrongful discharge was preempted by ERISA. The state court had held that the employer violated state public policy by discharging an em-

ployee in order to deny him pension benefits under an ERISA-covered plan. The Supreme Court held that because "the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law," the state law "relates to" ERISA, and the cause of action was preempted. *Ingersoll,* 498 U.S. at 139–40.

■ Likewise, the existence of DEC's STD plan is a critical factor in McMahon's effort to establish defendants' liability for breach of contract, negligence, and interference with an advantageous business relationship. In the absence of a short-term disability plan, McMahon has no contract for short-term disability benefits and can show no damages flowing from any alleged negligent handling of her claim.[8]

In *Vartanian v. Monsanto Co.*, 14 F.3d 697 (1 Cir., 1994), the First Circuit similarly held that the plaintiff's state law claims for breach of fiduciary duty, discrimination and misrepresentation were preempted by ERISA, because in order to determine whether the plaintiff could prevail, the court would need to inquire into the terms of the plan. "There is simply no cause of action if there is no plan." *Id.* at 700 (citing *Ingersoll,* 498 U.S. at 140). And in *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790 (1 Cir., 1995), the court held that a state law claim for negligent misrepresentation was preempted because in order to calculate the plaintiff's damages, the court would need to examine the terms of the plan. *Carlo,* 49 F.3d at 795.

■ In order to establish her claims for breach of contract,[9] negligence and intention-

---

7. *See Morash,* 490 U.S. at 114 ("[Congress] established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's *expectation* of the benefit would be defeated.") (emphasis added).

8. In fact, to the extent McMahon claims she is entitled to damages because her claim for benefits was processed improperly, the Supreme Court has directly stated the action is preempted. "[A]ll suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans [are] federal questions governed by [ERISA]." *Pilot Life Ins. Co.,* 481 U.S. at 56.

9. Perhaps the resolution of one portion of McMahon's claim would not require an examination of

the plan. McMahon argues that DEC breached a contractual promise to pay relocation expenses she would incur in moving her residence closer to her work assignment in Marlboro, Massachusetts. She claims that when she took the assignment in Marlboro, she was assured the company would pay relocation expenses should the commute from her home in New Hampshire begin to aggravate her back condition. But even if this is true, she has failed to show she suffered any damages as a result. Even if DEC had paid for her to move closer to Marlboro, there is no evidence to indicate she would not have been subject to the reduction of workforce plan. In other words, absent a breach, the uncontroverted facts still show she would have been out of work by the end of November 1992.

al interference with advantageous relationship, McMahon would need to demonstrate that under the terms of the plan, she continued to qualify for benefits under the STD plan after September 8, 1992. In order to determine whether this is so, the factfinder would need to analyze whether her inability to commute to and from work qualified as a "disability" which DEC was required to accommodate in some. way. The only way to answer this question is to examine the terms of the STD plan. Thus, her state law claims are preempted by ERISA.

### C. Failure to pursue ERISA administrative remedies

Finally, the Administrator asks for summary judgment on McMahon's ERISA claim (Count IX) because McMahon failed to pursue the administrative remedies for collecting long-term disability.[10] It seems McMahon claims that even though she was denied continuing STD benefits, she could have applied for long-term disability benefits at some point before she became ineligible for them after her employment was terminated.

 ERISA clearly requires that a plaintiff pursue her administrative remedies before bringing suit under ERISA. 29 U.S.C. § 1132(a)(1)(B); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821 (1 Cir., 1988). McMahon admits she failed even to apply for long-term disability benefits, but she claims she was unaware of the procedures for doing so. On this record, her claim is without merit.

The disability plans. and procedures in effect at the time were set forth in a publication entitled "Your Benefits Book." (# 98, Exh. V) As explained in the publication, DEC's personnel office would send out the forms on which to apply for long-term benefits after an employee had been "...totally disabled and out of work (on a short-term

basis) for about sixteen weeks...". (*Id.* at 66) Since McMahon's short-term disability was terminated after thirteen weeks, DEC was under no obligation under the Plan to send any information to her.

McMahon claims that she never received a hard copy of the Benefits Book. However, it was available to her on the company's computer system. *See* # 74, Exh. Q at 86–87; Exh. E at 120. She complains that she was unable to access the computerized copy of the book after her short-term disability benefits were terminated because almost immediately thereafter, her employment was terminated. However, there is nothing in the record to indicate that she ever asked to be given access to her computer in order to obtain information about applying for long-term disability benefits. Indeed, so far as appears of record, she never made any request of DEC or the Plan Administrator for information as to how to apply for long-term benefits.

Her failure to take any action with regard to long-term benefits becomes even more inexplicable because after she was informed of her termination on September 14, 1992, she admits to receiving communications from DEC which explained how to obtain any information she might need. Specifically, on September 18, 1992, Peter Howatt ("Howatt") of DEC mailed McMahon a letter enclosing a brochure describing DEC's Transition Financial Support Option Program.[11] The last paragraph of Howatt's letter informed plaintiff that "I will make. myself available for any questions that you have or if you prefer to meet I will met [sic] you in a Digital facility nearest to your home." (# 74, Exh. A to Exh. AA at 2) Although there were further oral communications between McMahon and Howatt, there is nothing to indicate she ever informed him that she was seeking to apply for long-term benefits or asked him how to apply for such benefits.

---

10. It is extremely difficult to discern what plaintiff's precise argument is with respect to the Plan Administrator's claim that Count IX is without merit because plaintiff failed to exhaust her administrative remedies. The reason for the difficulty is that the question of the failure to apply for long-term benefits is treated summarily (a total of eight lines) in the memorandum, *see* # 78 at p. 2, with a cross-reference to Section III of

the memorandum. Section III of the memorandum deals with why plaintiff did not appeal the termination of her short-term benefits.

11. The letter is Exhibit A to Exhibit AA found in # 74. The enclosure is Exhibit B to Exhibit AA of # 74.

More telling perhaps is that a section of the brochure specifically dealt with long-term disability benefits. (# 74, Exh. B to Exh. AA at 12–13) One of the paragraphs of that section read:

> Note: If you are totally disabled for a 26 week period, you may be eligible for long term disability (LTD) benefits as determined by the LTD carrier.

# 74, Exh. B to Exh. AA at 13.

The record is devoid of any evidence that McMahon took any action to inquire about how to apply for such benefits or to, in fact, apply for the benefits.

In addition, on October 5, 1992, DEC mailed McMahon a letter entitled "IMPORTANT INFORMATION ABOUT YOUR DISABILITY BENEFITS," (# 74, Exh. BB), which she admits receiving. (# 74, Exh. E at 262–3) Although this document informed her that DEC was changing disability carriers and the effect that would have on someone who was on disability at the time of the change, the last paragraph of the letter read:

> *For more information*
>
> You will find additional information about the existing disability plans in the 1991 edition of Your Benefits Book. For other details about your benefit plans, please call your Personnel contact.

# 74, Exh. BB at 2.

There is nothing in the record to indicate that McMahon did anything to get a hard copy of the benefits book or to find out how to apply for long-term disability benefits.

On this record, taking the evidence in the light most favorable to McMahon, there is no basis on which the Court could excuse her from the requirement that she at least apply for long-term disability benefits before seeking such benefits by filing a civil action in federal court. Summary judgment must be granted on the ERISA claim.

1. Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997, succeeding Shirley S. Chater, who was originally the named defendant. Pursuant to Fed.R.Civ.P. 25(d)(1), Commissioner Apfel has been substitut-

### V. Conclusion and Order

Since the STD plan in question here is an ERISA-covered plan, and since McMahon's state law claims "relate to" that plan, summary judgment must be granted on all claims in favor of defendants DEC and CORE. Therefore, it is ORDERED that Defendant Digital Electronic Corporation's Motion for Summary Judgment (# 72) be, and the same hereby is, ALLOWED on all claims. It is FURTHER ORDERED that Defendant CORE, Inc.'s Motion for Summary Judgment (# 70) be, and the same hereby is, ALLOWED on all claims. Furthermore, since McMahon failed to exhaust her administrative remedies, her ERISA claim against the Administrator is barred. Thus, it is FURTHER ORDERED that the Defendant Plan Administrator of Digital Equipment Corporation Accident and Sickness Plan's Motion for Summary Judgment (# 72) be, and the same hereby is, ALLOWED.