Haluk BEKIROGLU, Plaintiff,

v.

The PAUL REVERE LIFE INSURANCE COMPANY, Defendant.

No. CIV.A.01–10514–PBS.

United States District Court, D. Massachusetts.

Oct. 16, 2002.

Stephen L. Raymond, Haverhill, MA, for Haluk Bekiroglu, Plaintiff.

William J. Ritter, MacCarthy, Pojani & Hurley, Mark S Foss, MacCarthy Pojani & Hurley, LLP, Joseph M. Hamilton, Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, for Becker College Group Long Term Disability Plan, Becker College Group Life and AD & D Plan, the Paul Revere Life Insurance Company, Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### *INTRODUCTION*

The plaintiff, Haluk Bekiroglu, brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to challenge the defendant Paul Revere Life Insurance Company's decision to deny Long Term Disability insurance coverage. Both parties have filed cross-motions for summary judgment. After hearing, the Court *ALLOWS* Paul Revere's Motion for Summary Judgment and *DENIES* Bekiroglu's Motion for Judgment on the Administrative Record.

## FACTS

The following facts, gleaned from the administrative record, are undisputed except where otherwise stated.

### A. Professor Bekiroglu

Bekiroglu worked at Becker College in Worcester, Massachusetts as a full-time Professor from September 1, 1997 to May 31, 1999, and as Division Director for Business and Professor of Management and Business for the final year of his employment. He has a Ph.D. in Industrial Engineering. While working in these positions, Bekiroglu owned and operated a Burger King restaurant, which went out of business on December 31, 2000. He was scheduled to go back for a faculty appointment (not the director position) for the academic year 1999–2000. From November 12 to 14, 1998, Bekiroglu was hospitalized for congestive heart failure.

Through Becker College, Bekiroglu was insured by the defendant, Paul Revere Life Insurance Company. On May 31, 1999, at the age of 55, plaintiff submitted a claim for disability benefits due to his congestive heart failure, severe hypertension, diabetes, proteinuria[1], cardiomyopathy, hypercholesterolemia, and sleep apnea, as diagnosed by his physician, Elizabeth H. Johnson, M.D.. Dr. Johnson also indicated plaintiff suffered from symptoms of dyspnea (difficulty breathing), exercise intolerance, fatigue and edema (excessive tissue fluid). Plaintiff has not worked at Becker College since filing his application for disability coverage. His claim was initially denied on November 18, 1999. Plaintiff was awarded Social Security Disability, in the amount of $1335.00 per month beginning November 1999.

### B. The Plan

Plaintiff's Long Term Disability Plan (LTD Plan) provides benefits for: "(1) to-tal disability from any occupation; (2) total disability from the employee's own occupation; and (3) residual disability." The plan provides:

*Totally disabled from the employee's own occupation or total disability from the employee's own occupation means:*

1. because of injury or sickness, the employee cannot perform the important duties of his own occupation;

2. the employee is receiving Doctor's Care [this may be waived];

3. the employee does not work at all.

### C. Job Demands

The administrative record contains differing descriptions of Professor Bekiroglu's job demands and his physical capacity. Plaintiff describes his occupation as Director and Professor, Management and Business. Becker College's Human Resources Department has on file a description of the responsibilities of Division Director (which the parties agree is the appropriate position for review of plaintiff's job responsibilities). The description includes teaching two courses per semester, determining faculty teaching loads, providing student advisement, and various administrative responsibilities. Physical requirements include "instruct, dial a phone, hear at normal speaking levels, keyboard usage, sit, stand, talk/speak in person and over the phone, type, vision acuity and peripheral, walk and write." It adds as a special requirement the ability to travel between campuses as necessary. Mental requirements include: "Advise, coordinate, communicate thoughts clearly and in writing, debate/convince others, diagnose problems or issues, analyze, evaluate faculty performance, evaluate technical problems, interpret, use judgment, remember long

---

**1.** Proteinuria results from protein in the urine and potential sign of severe renal disease.

and short term information, research, observe, organize, plan, read, speak and supervise."

With respect to weight requirements, in the "Employer's Statement," Kathleen M. Garvey, Associate Vice President for Human Resources at Becker College, lists "Sedentary (10 lb. max)" as plaintiff's job requirement. In the "Claimant's Statement" section, dated May 31, 1999, Bekiroglu indicates that his job requirement is "light (20 lbs)." He also said he must lift a podium weighing 30 lbs. He states that he sits 3 hours at a time and 6 hours per day, stands 3 hours at a time 5.4 hours per day, and drives 1.5 hours at a time 3 hours per day.

### D. Medical Evaluations

In the doctor's portion of the claim form signed May 19, 1999, Dr. Johnson, the treating physician, an internist, submitted the "Attending Physician's Statement" that stated that plaintiff's symptoms of dyspnea, exercise intolerance, fatigue and edema "make it very difficult for [him] to function at a full level." In response to the question "Has patient been released to work in his/her occupation?", the "yes" box is marked. Dr. Johnson left blank the question "[w]hen should the patient be able to return to work?" Describing plaintiff's job capacity as "sedentary—10 lbs. max, Dr. Johnson marked the American Heart Association's Functional Capacity assessment as Class 2 (slight limitation)." Class II is defined: "Patients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain." Plaintiff's "Cardiac Residual Functional Capacity Questionnaire" (Cardiac Report) (completed by Dr. Johnson on March 31, 1999), indicates that plaintiff is both "capable of low stress jobs" and that "moderate stress is okay." He could walk 1–2 blocks without rest or severe pain.

However, Dr. Johnson also stated "High stress jobs interfere with optimal physical functioning," adding "there is much anxiety associated with his health problems." In her opinion, he could sit for two hours, stand for less than two hours, and never lift more than 10 lbs. No mention is made about high stress stemming from the job.

Paul Revere hired a medical consultant to perform a cardiovascular review, Dr. Pollock, who on July 13, 2000 agreed with Dr. Johnson that plaintiff's cardiac functional capacity is "class 2 [slight limitation]." Based on a review of the medical records, Dr. Pollack agreed that Plaintiff has advanced diabetes with end-organ involvement, nephropathy with 50 percent reduction in renal function and poorly controlled hypertension "despite very aggressive medical therapy." However, based on stress tests (conducted prior to his congestive heart failure in November 1998), he concluded that plaintiff could engage in sedentary and light work with "a good safety margin." Subsequent tests at the time of hospitalization in November 1998 confirmed, in his view, no "significant coronary artery disease." Dr. Pollock continued, "The medical record available for review, reviewed in their entirety makes AP's [attending physician's] caution to limit claimant to sedentary duties difficult to support."

### E. Burger King

Defendants conducted video surveillance of the plaintiff in July and August 1999. Plaintiff has been videotaped behind the counter of the Burger King he owns, serving customers, cleaning and stacking trays, and working a grill. This lasted seventeen minutes. Videotapes also show him operating a motor vehicle; cleaning the windshield of his car; and loading groceries, including a full watermelon, into his car. He was seen running to get out of the rain.

According to Paul Revere's claim representative, Mary Koval, plaintiff admitted that he was working one time weekly at Burger King, but stated that he was drawing no income. In an affidavit, Plaintiff denies he said that he worked there once weekly; rather, he said he told her he *went* to (not worked at) his Burger King once weekly.[2]

### F. The Appeal

On July 17, 2000, defendant rejected Professor Bekiroglu's appeal. The denial letter is inconsistent, pointing out that the position of Division Director was "sedentary in nature" and later that it is "light duty in nature." It emphasized that Becker College was willing to make accommodations to assist Bekiroglu, which he declined, and that the video undermined his claim of severe physical limitations. Defendant concluded that no documentation contained within the file would support Mr. Bekiroglu's inability to perform the important duties of his own occupation.

## DISCUSSION

### I. Standard of Review under ERISA

■ A district court reviews ERISA claims arising under 29 U.S.C. § 1132(a)(1)(B) *de novo* unless the benefits plan in question confers upon the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Rodriguez–Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 583 (1st Cir.1993) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). If the plan clearly gives such discretionary authority, then the administrator's deci-

sions are subject to "a deferential 'arbitrary and capricious' standard of judicial review." *Recupero v. New England Tel. & Tel. Co.*, 118 F.3d 820, 827 (1st Cir.1997) (citing *Firestone*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80).

The Plan provides:

The Paul Revere Life Insurance Company is the Claims Administrator for benefits contained in the group policies it has issued to your employer. As such, it has the full, final, conclusive, and binding authority to construe and interpret any of its group insurance policies that provide benefits under your employer's welfare benefit plan as may be necessary to make any and all decisions and determinations under such policies. A decision of the Claims Administrator shall not be overturned unless it is arbitrary and capricious or unless there is no rational basis for the decision.

This evokes an "arbitrary or capricious" standard of review. *See Chandler v. Raytheon Employees Disability Trust and Metro. Life Ins. Co.*, 53 F.Supp.2d 84, 89 (D.Mass.1999), *aff'd*, 229 F.3d 1133 (1st Cir.2000).

■ Under the arbitrary and capricious standard, a decision to deny benefits to a beneficiary will be upheld if it was "reasoned and supported by substantial evidence in the record," evidence that is "reasonably sufficient to support a conclusion." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1998). Importantly, the "sufficiency of the evidence to support [the defendant insurance company's] determination [to deny coverage] 'does not disappear merely by reason of contradicto-

---

**2.** Generally speaking, the plaintiff is not permitted to supplement the administrative record with information he could have provided at the time. Here, however, there is a dispute concerning the accusation of a damaging confession. Therefore, there is good cause to

consider the affidavit on this narrow point. Accordingly, I am not resting this decision on defendant's argument that plaintiff was working, which would nix the claim under the third not "working" prong of the total disability definition.

ry evidence.' " *Sullivan v. Raytheon Co.,* 262 F.3d 41, 52 (1st Cir.2001) (citing *Doyle,* 144 F.3d at 184), cert. denied, 534 U.S. 1118, 122 S.Ct. 931, 151 L.Ed.2d 893 (2002).

■ The fact that a defendant both determines coverage and has the responsibility for payment is not, without more, a conflict sufficient to abandon an arbitrary and capricious review, in favor of a *de novo* examination. *Doyle,* 144 F.3d at 184. ("[I]n case of conflict [the court] give[s] 'more bite' to the arbitrary and capricious standard.") The claimant retains the burden to show that the decision was "improperly motivated." *Id.*

The question before the Court is whether the defendant's determination that plaintiff is not totally disabled from performing the important duties of his occupation is arbitrary and capricious. The burden of proof is on plaintiff. *See Terry v. Bayer,* 145 F.3d 28, 34 (1st Cir.1998).

## II. Long Term Disability Claim

■ A review of the record demonstrates that defendant's decision, while debatable, is not arbitrary and capricious. First, consensus of medical opinion is that the limitation from plaintiff's heart condition is "slight." Most significantly, his own doctor stated that he could go back to his occupation, that he had a "Class 2 (slight limitation)" from his cardiac condition, and that he was capable of "low stress jobs" and that "moderate stress is okay." Plaintiff protests that this answer was in error, pointing to the fact that the doctor failed to fill in the space designating when he could return to work. This omission is more likely due to the fact that plaintiff was actually working at his occupation at the time of the answer. However, even assuming an error, there was ample time and opportunity to correct the record with the doctor's explanation of the discrepancy; this was not done.

The doctors did disagree on whether Professor Bekiroglu could perform only sedentary duties, or whether he could engage in light duties as well. The analysis of this dispute is complicated by the fact that the denial letter concluded inconsistently that his job was both sedentary and light in nature. Because neither party requested a remand to clarify this inconsistency, I will credit plaintiff's claim that the job is light duty in nature. The medical consultant agreed with the analysis that there was only a slight cardiac limitation, finding the "caution to limit claimant to sedentary duties difficult to support." The mere fact that the defendant reached a decision contrary to the opinion of plaintiff's evaluator, when the defendant based its decision on substantial evidence in the record, including the report of a qualified outside medical reviewer, does not mandate a conclusion that the denial was arbitrary. *See Brigham v. Sun Life of Canada,* 183 F.Supp.2d 427, 437 (D.Mass.2002).

The record contained conflicting evidence of the amount of weight plaintiff was required to lift. Plaintiff points out that his job involved twenty to thirty pounds of lifting, not the ten pounds assumed by the employer. *The Dictionary of Occupational Titles* (4th ed. rev.1991) defines the position of "Faculty Member", "College or University, # 090,227–010" as "light duty work, requiring the exertion of up to 20 pounds of force frequent (4) and for a negligible amount of force constantly." Plaintiff's claim that he is totally disabled because of the weight requirements must be somewhat discounted because he rejected the college's offer to provide reasonable accommodations for the weightlifting requirements of the job. A claims administrator may properly consider an employer's job requirements, as they are adjusted by reasonable accommodations, in determining whether an employee is totally disabled from his occupation. *See Ross v.*

*Indiana State Teacher's Assoc. Ins. Trust,* 159 F.3d 1001, 1010 (7th Cir.1998) (holding it was not unreasonable to have considered accommodations in determining whether beneficiary was able to perform the substantial duties of his job even when the plan did not address the issue); *McCarthy v. Metropolitan Life Ins. Co.,* 2002 WL 1424577 at *2 (D.Mass.).

The defendant relies heavily on the videotape of the plaintiff working at the Burger King and lifting the watermelon into the car. While the job of director does require standing and traveling between campuses, the videotape evidence, together with the medical evidence, would support the conclusion that plaintiff has the ability to perform light duty. This surveillance is damning. *See Vlass v. Raytheon Employees Disability,* 244 F.3d 27, 31 (1st Cir.2001).

 The last issue to tackle involves the stress limitations. It is undisputed that plaintiff cannot perform a job involving high stress. Yet, the treating physician states that Bekiroglu can operate with moderate stress, and there was no evidence in the administrative record to suggest that division director of the business department is a high stress occupation. While plaintiff's counsel urges the Court to infer that academic director jobs are by nature high stress, such a conclusion is not inevitable. Indeed, compared to the rough-and-tumble of business, some (by no means all) academic jobs might be considered mellow. The only evidence of stress in the administrative record was that plaintiff was understandably anxious about his medical condition. Plaintiff seeks to cure this obvious deficiency in the administrative record with an affidavit filed in this case, which defendant has moved to strike. That motion is **ALLOWED** because the

substantial evidence review is generally limited to the administrative record unless there is good cause for not submitting the information earlier.[3] *See Vlass v. Raytheon Employees Disability Trust,* 244 F.3d 27, 30 n. 6 (1st Cir.2001) (noting that the First Circuit has not yet decided whether the record should only include items available to the administrator at the time of the decision, but listing cases which support limitation).

## III. Life Insurance Claim

 Plaintiff asserts a claim for Waiver of Premium under the Life Insurance Plan, but stipulates that such a claim was never formally made to the defendant. Where an insurance claim was never made, a plaintiff has not exhausted his administrative remedies and litigation is premature. *Drinkwater v. Metro. Life Ins. Co.,* 846 F.2d 821, 825 (1st Cir.1988); *McMahon v. Digital Equipment Corp.,* 998 F.Supp. 62, 70 (D.Mass.1998), *aff'd,* 162 F.3d 28 (1st Cir.1998).

### ORDER

For the foregoing reasons it is hereby **ORDERED:**

1. Defendant's Motion for Summary Judgment (Docket No. 27) is **ALLOWED.**

2. Plaintiffs' Motion for Judgment on the Administrative Record (Docket No. 31) is **DENIED.**

3. Defendant Paul Revere Life's Motion to Strike Affidavit of Plaintiff in Support of Motion for Judgment on the Administrative Record (Docket No. 33) is **ALLOWED** in part.

---

**3.** Indeed, even if I were to consider the affidavit, a primary source of stress was the Burger King itself.