**Edward Mark DREZNIN, Individually and as Administrator of the Estate of Susan Marie Dreznin, Plaintiff,**

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant.**

**No. CIV.A. 01–12259–NMG.**

United States District Court, D. Massachusetts.

Sept. 30, 2005.

338

Mark A. Rosen, Davidson & Grannum, LLP, Boston, MA, for Edward Mark Dreznin, Plaintiff.

Joshua Bachrach, Rawle & Henderson, LLP, Philadelphia, PA, Gary N. Stewart, Rawle & Henderson LLP, Harrisburg, PA, for Reliance Standard Life Ins. Co., Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

In the present dispute, Edward Mark Dreznin ("Mr.Dreznin") alleges that defen-

dant Reliance Standard Life Insurance Company ("RSL"): 1) is estopped from denying coverage benefits under the life insurance policy for which his wife Susan Marie Dreznin ("Mrs.Dreznin") applied and 2) has wrongfully denied benefits under the life insurance policy at issue in this case. The parties agreed to a Joint Stipulation of Facts and submitted it to this Court on September 2, 2005. After the submission of memoranda of law and replies thereto, the parties appeared for oral argument on September 19, 2005. Having considered the oral and written arguments of the parties, the Court now resolves the case as follows.

## I. *Background*

### A. Facts

The decedent, Mrs. Dreznin, was an employee of Innovation Luggage, Inc. ("Innovation"), which offers its employees group term life insurance pursuant to a program underwritten by RSL. Under the program, employees under 60 years of age receive a guaranteed $50,000 of coverage if they submit an application and the premiums for it are paid by Innovation.

Employees may also receive $200,000 of additional coverage by filling out an application and obtaining approval from RSL. RSL's policy documentation states that the additional coverage becomes effective

> on the first day of the month following the date the application is signed, provided the Insurance Company agrees to insure such person and any additional premium is received.

Employees are responsible for paying premiums due for that additional coverage.

On December 7, 1998, the decedent applied for $250,000 of coverage ($50,000 of guaranteed coverage plus $200,000 of additional coverage) and authorized the release of her medical records in connection with

her application. RSL did not thereafter notify decedent that she had been approved or disapproved for the additional coverage but Innovation did begin the automatic deduction of monthly premiums from her salary on January 1, 1999. Despite the fact that Innovation deducted premiums from Mrs. Dreznin's payroll for the supplemental coverage, it failed to remit those deductions to Reliance Standard before her death.

On April 16, 1999, the decedent died and a claim was submitted to RSL on her behalf to obtain the $250,000 benefit. One month later, RSL notified the plaintiff that the $200,000 non-guaranteed portion of her coverage had been denied on medical grounds. Specifically, RSL alleges that it denied coverage based on information from decedent's physician which was generated before decedent's application was submitted but not obtained by RSL until April 23, 1999 (seven days after decedent's death). Thus, RSL did not consider whether to accept coverage of the decedent until after her death.

The plaintiff appealed the denial of coverage on August 25, 1999 but RSL upheld its initial decision. On December 19, 2001, the plaintiff filed the instant action alleging breach of contract (Counts I, III), breach of the implied covenant of good faith and fair dealing (Counts II, IV), violation of the Consumer Protection Act (M.G.L. c. 93A) (Count V) and violation of the Unfair Insurance Practices Act (M.G.L. c. 176D § 3(9)(f)) (Count VI).

The defendant moved for summary judgment on the grounds that: 1) the group term life insurance at issue is an ERISA "employee benefits plan", 2) as such, Plaintiff's state law claims, which are related to that plan, were preempted by ERISA and 3) because Plaintiff could not prove an ERISA claim, dismissal, rather than leave to amend the complaint, was

appropriate. The plaintiff responded that his claims were not preempted but, even if they were, he should be permitted to amend the complaint to state an ERISA claim.

On December 15, 2004, this Court entered a Memorandum and Order holding that the plaintiff's claims were preempted and granting him leave to assert his claims under ERISA. On February 22, 2005, the plaintiff filed an amended complaint stating claims for: 1) wrongful denial of ERISA benefits and 2) restitution of premiums paid for the $200,000 portion of coverage. The parties subsequently agreed to a non-evidentiary hearing on the matter and submitted a Joint Stipulation of Facts. They filed memoranda of law and replies thereto, and, on September 19, 2005, were heard at oral argument.

### B. Relevant Language in the RSL Policy

The policy RSL issued to Innovation Luggage states, in pertinent part:

> The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits.

And, under the heading **"Effective Date of Individual Insurance"**:

> **Guaranteed Issue Amount:**
>
> An eligible Person must apply in writing for this insurance.
>
> EMPLOYEE: If an eligible employee is under the age of 60 and applies for coverage within 31 days of becoming eligible, up to $50,000 of insurance will be issued. . . . The employee's Effective Date of coverage will be the first day of the month following the date his application is signed, provided any service waiting period has been satisfied and any premium has been paid, as applicable.

> **Amounts Over The Guaranteed Issue Amount And Amounts Applied For After The Initial Eligibility Period:**
>
> An Eligible Person's coverage will be effective on the first day of the month following the date the application is signed, provided the Insurance Company agrees to insure such person and any additional premium is received.
>
> Under all circumstances, premiums must be paid as required, and the service waiting period, if any, must be satisfied.

## II. *Legal Analysis*

The hearing on September 19, 2005 was unique because, while it resembled a hearing on a dispositive motion, no motion had been filed. Because no evidence was presented and the material facts were undisputed, the Court declines to enter findings of fact and conclusions of law as it would after a bench trial pursuant to Fed. R.Civ.P. 52(a). Rather, the Court will resolve the issues pursuant to Fed.R.Civ.P. 56, treating the pleadings filed as cross-motions for summary judgment.

### A. Estoppel Claim

Plaintiff alleges that RSL is estopped from denying benefits under the life insurance policy at issue in this dispute. The issue of equitable estoppel in ERISA actions has been raised in the First Circuit previously. *See Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, 239 F.3d 51 (1st Cir.2001). The First Circuit has held that it is "still an open question in this circuit whether an equitable estoppel claim is permitted under ERISA." *Id.* at 57. Because the First Circuit's position on these issues remains unsettled and because the Court finds other grounds on which to resolve this case, the Court will leave to the side plaintiff's estoppel claim and instead turn its attention to the cen-

tral issue in this dispute, namely whether RSL wrongfully denied benefits under its life insurance policy.

### B. Wrongful Denial of Benefits Claim

Plaintiff next alleges that RSL wrongfully denied benefits under the life insurance policy for which his wife, Susan Marie Dreznin, applied. The case law in the First Circuit on this issue is lengthy.

#### 1. Legal Standard

■ A district court reviews ERISA claims arising under 29 U.S.C. § 1132 *de novo* unless the benefits plan in question confers discretionary authority upon the administrator to "determine eligibility for benefits or to construe the terms of the plan". *Bekiroglu v. Paul Revere Life Ins. Co.*, 223 F.Supp.2d 361, 366 (D.Mass.2002), *aff'd* 75 Fed.Appx. 8 (1st Cir.2003). If the plan clearly grants such authority to an administrator, then the administrator's decisions are entitled to deference and will be reversed only if they were "arbitrary, capricious or an abuse of discretion". *Diaz v. Seafarers Int'l Union*, 13 F.3d 454, 456 (1st Cir.1994).

■ Under that standard, a "decision will be upheld if it was within [the plan administrator's] authority, reasoned, and supported by substantial evidence in the record." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1998) (internal citations omitted). Evidence is substantial if it is "reasonably sufficient to support a conclusion". *Sullivan v. Raytheon Co.*, 262 F.3d 41, 51 (1st Cir.2001). Evidence contrary to an administrator's decision does not render the decision unreasonable, provided it is supported by substantial evidence. *Wright v. R.R. Donnelley Sons Co. Group Benefits Plan*, 402 F.3d 67, 74 (1st Cir.2005).

■ In applying the arbitrary and capricious standard, the existence of a conflict of interest on the part of the administrator is a factor to be considered. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In the First Circuit, if a court finds there is improper motivation amounting to a conflict of interest, the court "may cede a diminished degree of deference—or no deference at all—to the administrator's decision." *Leahy v. Raytheon Co.*, 315 F.3d 11, 16 (1st Cir.2002). However, "[a] chimerical, imagined, or conjectural conflict will not strip the fiduciary's determination of the deference that would otherwise be due." *Id.* The burden is on the claimant to demonstrate a conflict of interest. *Pari–Fasano v. ITT Hartford Life & Accident Ins. Co.*, 230 F.3d 415, 418 (1st Cir.2000). If no conflict of interest exists, a court must proceed to ensure that the decision was not objectively unreasonable in light of the available evidence, recognizing that the existence of a potential conflict of interest will affect the court's determination of what was reasonable conduct by the insurer under the circumstances. *Id.* at 419.

■ In this dispute, as described above, RSL's insurance plan clearly confers discretion on the administrator to determine eligibility. Because the Plan contains discretionary language, this Court will apply the arbitrary and capricious standard in reviewing RSL's eligibility determination of Mrs. Dreznin. In applying that standard, the Court will analyze: 1) whether RSL labored under a conflict of interest in this matter and 2) whether RSL's determination was unreasonable in light of the information available to it.

#### 2. Conflict of Interest

Plaintiff argues that RSL labored under a conflict of interest, as evidenced by: 1)

its dual status as payor of benefits and administrator with respect to the life insurance benefits and 2) other factors that plaintiff claims demonstrate improper motivation. This Court addresses those arguments seriatim.

### a. Conflict Based on Status

■ Plaintiff alleges that RSL had a conflict of interest based upon its status as both administrator and payor of benefits. In the First Circuit, the fact that the plan administrator pays benefits out of its own assets does not alter the arbitrary and capricious standard of review. *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 125–26 (1st Cir.2004). Although an insurer does have a conflict of sorts when a finding of eligibility means that it will have to pay benefits out of its own pocket, the market presents competing incentives to the insurer that substantially minimize that apparent conflict. *Pari–Fasano* at 418. For example, an employer's principal reason for adopting a benefit plan is to please employees, not to promote its bad reputation. *Doyle* at 184. For that reason, "an employer would not want to keep an overly tight-fisted insurer." *Id.*

Plaintiff argues that in the present case the market does not present competing incentives that would substantially minimize the apparent conflict of interest. Mr. Dreznin contends that RSL's failure to pay the full death benefits to him causes no displeasure to Innovation's employees nor harm to its reputation. Plaintiff asserts that, to the contrary, RSL had nothing to lose in terms of customer relations by not paying Mr. Dreznin's claims for the additional $200,000 in non-guaranteed coverage but would incur a significant financial loss if it paid that claim after the program had been in effect for only four months.

■ Although plaintiff's argument is intriguing, it appears short-sighted. In *Doyle*, the First Circuit noted that an employer had an incentive to maintain a good reputation with its employees and would not retain an overly tight-fisted insurer who would jeopardize that reputation. The same reasoning would appear to apply here. Mrs. Dreznin's case is surely well known to other Innovation employees, and they would certainly be displeased with RSL's decision (and their employer's acquiescence therein) regarding their former fellow employee. As a result, RSL did had something to lose in customer relations by its decision regarding Mrs. Dreznin and that factor substantially minimized the apparent conflict of interest based upon RSL's status as both administrator and payor of benefits.

### b. Conflict Based on Improper Motivation

Plaintiff next alleges that RSL had a conflict of interest due to improper motivation. Much of plaintiff's claim of improper motivation evolves from the significant issue that RSL conducted its underwriting review of Mrs. Dreznin's application and made its ultimate decision to decline her application for the additional coverage with full knowledge that she had already died. This Court addresses that issue by analyzing its component parts.

### i. Timing of Decision Declining Coverage

■ Plaintiff's principal allegation of improper motivation concerns the timing of RSL's decision to decline Mrs. Dreznin's application for additional coverage. As stated in the Joint Stipulation of Facts, Mrs. Dreznin completed her application for coverage under the RSL policy, including her request for $200,000 in supplemental coverage on December 7, 1998. Her application was submitted to RSL on or about December 18, 1998. The application was

then retained by RSL's New York Regional Office due to the submission of incorrect applications and rates.

Mrs. Dreznin died on April 16, 1999, and RSL was informed of her death the following week. Only after such notification did RSL request Mrs. Dreznin's medical records and commence the underwriting process to determine her eligibility for coverage. RSL received Mrs. Dreznin's application on April 23, 1999 and her medical records sometime within the three weeks thereafter. On or about May 13, 1999, Dr. Harry Frankel of RSL's medical underwriting staff concurred in the determination that Mrs. Dreznin was ineligible for the additional coverage because of the results of her electrocardiogram ("EKG") of January 13, 1998.

Although the death of Mrs. Dreznin placed RSL in the rather awkward and unusual position of having to make an eligibility determination knowing that the applicant was already deceased, the unfortunate timing cannot be blamed on RSL. Despite the fact that four months had elapsed between the time Mrs. Dreznin submitted her application to RSL and the time it began the underwriting process of her application, that amount of time is not excessive under the circumstances. The delay may have been extensive but the fact that incorrect information and rates were included with the applications, forcing RSL's New York Regional Office to hold up the processing of the application, is at least partially explanatory. Any longer delay would be more problematic but given the bureaucratic nature of the insurance underwriting process, this Court finds that the delay of RSL's review of Mrs. Dreznin's application was not inexcusable.

Plaintiff contends that once RSL became aware of Mrs. Dreznin's death, it should have submitted the determination of her insurability to an independent arbitrator to whom such information was not disclosed. Despite plaintiff's contention, he has cited no authority that would require such an action by RSL under these circumstances. Although it certainly would have been prudent on RSL's part to have done so, the fact that it did not does not render its subsequent declination of coverage a product of improper motivation.

ii. **Medical Basis of Declination Decision**

■ Plaintiff also contends that the alleged medical basis for RSL's decision to decline additional coverage demonstrates improper motivation. According to plaintiff, neither at the time RSL initially denied the claim, nor when it confirmed that denial did RSL specify the medical basis for its decision. RSL did, however, assert that its declination of coverage was based on medical information obtained from Mrs. Dreznin's physician that predated her December 7, 1998 application. Although no specific information was originally specified, RSL ultimately declared that Mrs. Dreznin's abnormal EKG performed on her by her personal physician, Dr. David Spiegelman, on January 13, 1998 was the basis for its decision to decline coverage.

Plaintiff responds that the EKG results, which he does not deny were abnormal, do not represent a sufficient basis for RSL's rejection of coverage in light of the totality of Mrs. Dreznin's medical records submitted to RSL and the fact that the decision to decline was made knowing Mrs. Dreznin was already deceased. Plaintiff's argument is not without its appeal. The fact that a senior underwriter in RSL's Medical Underwriting Department informed its Medical Director, Dr. Harry Frankel, to whom the matter was referred for an independent eligibility determination, of Mrs. Dreznin's death is particularly troubling but it does not alter the fact that Dr.

Frankel cited valid and appropriate reasons for his decision to decline coverage.

Plaintiff argues that RSL's reliance on the EKG results as justifying the denial of coverage was self-serving given the fact that there was more recent favorable evidence in Mrs. Dreznin's medical records. Plaintiff specifically points to the medical report of October 30, 1998 (six weeks before Mrs. Dreznin submitted her application to RSL) in which Dr. Spiegelman declared Mrs. Dreznin in excellent health and having a usual life expectancy. Plaintiff argues that the October report is even more salient given that it emanated from the same doctor who performed the January 13, 1998 EKG upon which RSL relied to reject coverage. According to plaintiff, RSL's focus on the EKG result and its failure to refer to the October, 1998 medical report signals improper motivation on RSL's part.

This Court declines to second-guess the medical determinations made in this case. The fact that RSL's medical underwriting staff focused on the abnormal EKG results and gave less deference to other reports within Mrs. Dreznin's medical records does not constitute improper motivation. Moreover, the October 30, 1998 medical report upon which plaintiff places so much emphasis is of dubious import. First, the report was written by Dr. Spiegelman as part of an application by Mrs. Dreznin to become an adoptive parent, not as part of an insurance application. Second, the report contains some glaring omissions, most notably that Mrs. Dreznin had a medical history of dizzy spells and hypoglycemia. In short, RSL's decision to put more weight on the objective EKG result from January 13, 1998 than on the subjective opinion of Dr. Siegelman in the October 30, 1998 medical report was not unreasonable nor indicative of improper motivation.

Plaintiff also contends that RSL's reliance on Mrs. Dreznin's EKG results suggests improper motive when viewed with the knowledge that RSL had no consistent guidelines with respect to insurability decisions. Plaintiff argues that RSL has provided no support for its contention that an abnormal EKG alone is a basis for denying coverage. Nor does RSL offer any evidence that it has never issued non-guaranteed coverage to an individual who had an abnormal EKG but was otherwise healthy. Notwithstanding these shortcomings in RSL's argument, it is not unreasonable for RSL to have based its declination of coverage on Mrs. Dreznin's abnormal EKG results.

Moreover, the abnormal EKG was not the only negative indicator on Mrs. Dreznin's medical record. At oral argument, counsel for RSL pointed out that Dr. Spiegelman noted in his October 30, 1998 medical report that Mrs. Dreznin had been treated previously for ovarian cancer. According to RSL's counsel, that condition would also have been grounds for declining coverage and the only reason that factor was not listed by RSL in its communications with Mr. Dreznin was due to the redundancy of its implication. Although this Court is troubled by the Record's lack of information regarding RSL's eligibility criteria, plaintiff has failed to make a sufficient case for improper motivation on the part of RSL given that RSL based its decision to decline coverage on the objective EKG results presented to it.

### 3. Reasonableness of RSL's Decision

 Having found no conflict of interest on the part of RSL in its determination of eligibility with respect to Mrs. Dreznin's application for additional coverage, this Court proceeds to examine whether the eligibility decision made by RSL was objectively unreasonable in light of the avail-

able evidence. In applying the arbitrary and capricious standard of review, this Court affords deference to RSL's decision.

Plaintiff alleges that RSL's eligibility determination regarding Mrs. Dreznin's application was unreasonable in light of the information available to it. He objects to the fact that: 1) the basis of RSL's decision to decline coverage consisted solely of Mrs. Dreznin's medical records and those records conflict as to her insurability, 2) the sole stated basis of RSL's decision to decline coverage was the abnormal EKG which plaintiff alleges had no clear and direct relationship to the cause of death and 3) RSL disregarded the October 30, 1998 medical report declaring Mrs. Dreznin in excellent health.

Plaintiff's objections do not convince this Court that RSL's determination was unreasonable. First, RSL based its decision to decline Mrs. Dreznin's application for the additional coverage on her abnormal EKG results of January 13, 1998. That evidence was reasonably sufficient to support RSL's conclusion and the fact that conflicting evidence exists does not render that conclusion unreasonable. Second, the fact that there was no causal link between the abnormal EKG results and Mrs. Dreznin's cause of death is irrelevant to RSL's decision. RSL made an eligibility determination regarding Mrs. Dreznin's application based on a review of the medical records that existed prior to the date she completed the application for coverage, December 7, 1998. The ultimate cause of Mrs. Dreznin's death is immaterial to RSL's determination of ineligibility. Finally, the fact that RSL based its ultimate decision on Mrs. Dreznin's EKG results and did not mention Dr. Spiegelman's October 30, 1998 medical report is not unreasonable. The decision-makers for RSL believed that Mrs. Dreznin's abnormal EKG represented a reasonably sufficient basis

to decline her application for additional coverage and the existence of the October 30, 1998 report does not invalidate that determination, especially in light of the limitations of that report.

## ORDER

Plaintiff has failed to meet his burden of showing that defendant labored under a conflict of interest. Moreover, plaintiff has failed to prove his claim that defendant was arbitrary and capricious in its decision to decline Mrs. Dreznin's application for $200,000 of additional, non-guaranteed life insurance coverage and judgment will, therefore, enter for the defendant.

**So ordered.**